# BARBER ASPHALT PAVING COMPANY v. FRENCH et al., Appellants.

### In Banc, November 13, 1900.

1. **Municipal Corporations: DELEGATED POWERS: DISCRETION.** The Legislature may delegate to municipal corporations the power to open, improve and pave streets; and in the exercise of such powers by such corporations, its discretion within the legitimate sphere of its authority is proportionately as wide as is the like discretion possessed by the legislature of a State, and is not subject to judicial revision or reversal.

2. ———: **BENEFIT ASSESSMENT: NOTICE TO TAXPAYER.** In a proceeding by a city to enforce the lien of a special tax-bill, for the cost of paving a street, issued against the owner of a lot abutting thereon, notice to such taxpayer is not required. Such proceeding calls for no inquiry into the weight of evidence, nor for anything in the nature of a judicial examination, and nothing could be changed by hearing the taxpayer. No right of his is therefore invaded.

3. ———: **ORDINANCE: REPAIRS: ULTRA VIRES.** The requirement of a city ordinance and contract providing for maintaining and repairing for five years a street upon which paving is done, is not *ultra vires* on the part of the city.

4. ———: **SPECIAL TAX-BILL: FEDERAL CONSTITUTION: DUE PROCESS OF LAW.** The city council by resolution declared the work of paving a street to a stated extent, and with a pavement of a defined character, to be necessary. This resolution was published for ten days, and the contract of paving let to the lowest and best bidder, conformably to the city charter. The contract expressly provided that the work should be paid for by the issuance of special tax-bills. The cost of

the pavement was to be apportioned and charged against the lots fronting thereon according to the method prescribed by the charter, which is, that the total cost of the work shall be apportioned to the frontage of the several lots or tracts of land abutting upon the improvement. *Held,* that a special tax-bill issued in accordance with the above provisions of the city charter is a valid lien upon the tract of land against which it is issued, and is not in violation of the fourteenth amendment to the Federal Constitution which prohibits the taking of private property without due process of law.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

AFFIRMED.

*Ess & Georgen* and *Gage, Ladd & Small* for appellants.

*Scarritt, Griffith & Jones* for respondent.

GANTT, C. J.—This suit was instituted in the circuit court of Jackson county, returnable to the October term (1899) thereof, for the purpose of enforcing the lien of a tax-bill issued by Kansas City in part payment of the cost of paving Forest avenue from Independence avenue to Twelfth street with an asphalt pavement. The petition is in the usual form.

The defense relied upon by the defendants, although stated in several different forms, may be resolved into two contentions: First, that the requirement of the ordinance and contract providing for the work in respect to the guarantee thereof for five years is *ultra vires* on the part of the city, and void; and, second, that the method of apportioning and charging the cost of the pavement violates the limitation of the Federal Constitution that no State shall deprive any person of his property without due process of law.

The work done consisted of paving with asphaltum the

roadway of Forest avenue in the said city, thirty-six feet in width, from Independence avenue to Twelfth street, a distance of one-half of a mile.   Forest avenue is one of the oldest and best improved residence streets in Kansas City, and all of the lots abutting thereon front the street and extend back therefrom uniformly to the depth of an ordinary city lot, to an alley.   The lots are all improved and used for residence purposes, and all of the lots are substantially on the grade of the street as improved, and are similarly situated with respect to the asphalt pavement.   The structure of the pavement along its entire extent is uniform in character and quality.   There is no showing that there is any difference in the value of any of the lots abutting upon the improvement.   The evidence of four witnesses was taken, each of whom testified that each and every lot fronting on that part of the street improved was specially benefited to an amount exceeding the cost of the pavement, and that each of the several lots abutting upon the improvement shared the total benefit sustained by all such lots in the proportion of the frontage of each lot thereon to the total frontage on the improvement of all such lots.

This paving procedure was inaugurated conformably to the requirements of the Kansas City charter, by the adoption of a resolution by the common council of the city, declaring the work of paving the street to a stated extent, and with a pavement of a defined character, to be necessary, which resolution was first recommended by the board of public works of the city.   This resolution was thereupon published for ten days in the newspaper doing the city printing.   Thereafter, the resident owners of the city owning a majority of front feet of lands belonging to such residents and fronting on that part of the street to be improved, had the right, within thirty days after the first day of the publication of the resolution, to file a remonstrance with the city clerk against the proposed im-

provement, and thereby to divest the common council of the power to make the improvement; and such property owners had the right, by filing within the same period a petition so to do, to have such street improved with a different kind of material or in a different manner from that specified in such resolution. In this proceeding neither such a remonstrance nor petition was filed, and the common council, upon the recommendation of the board of public works, enacted an ordinance numbered 5891, requiring the construction of the pavement. The charter requires that a contract for such work shall be let to the lowest and best bidder. Thereupon, bids for the work were duly advertised for, and the plaintiff being the lowest and best bidder therefor, a contract was, on the thirty-first day of July, 1894, entered into between Kansas City and the plaintiff for the construction of said pavement.

The contract expressly provides that the work shall be paid for by the issuance of special tax-bills, according to the provisions of the Kansas City charter, and that the city shall not in any event be liable for or on account of the work. The cost of the pavement was apportioned and charged against the lots fronting thereon according to the method prescribed by the charter, which is, that the total cost of the work shall be apportioned and charged against the lands abutting thereon according to the frontage of the several lots or tracts of lands abutting upon the improvement. The charge against each tract of land is evidenced by a tax-bill. The tax-bill representing the assessment against each lot is, by the charter, made a lien upon the tract of land against which it is issued, and is *prima facie* evidence of the validity of the charge represented by it. Such lien can be enforced only by suit in a court of competent jurisdiction against the owners of the land charged. No personal judgment is authorized to be rendered against the owner of the land. The right is expressly conferred on the owner of reducing the amount of the recovery

by pleading and proving any mistake or error in the amount of the bill, or that the work was not done in a good and workmanlike manner.

The judgment was for the plaintiff for the amount due on the bill and for the enforcement of his lien, from which defendants, having unsuccessfully moved for a new trial and in arrest of judgment, have appealed.

Prior to the decision of the Supreme Court in Norwood v. Baker, 172 U. S. 269, the method adopted in the charter and ordinance of Kansas City of charging the cost of paving Forest avenue against the adjoining lots according to their frontage had been repeatedly authorized by the Legislature of Missouri and such laws had received the sanction of this court in many decisions. St. Louis v. Allen, 53 Mo. 44; St. Joseph v. Anthony, 30 Mo. 538; Neenan v. Smith, 50 Mo. 528; Kiley v. Cranor, 51 Mo. 541; Rutherford v. Hamilton, 97 Mo. 543; Moberly v. Hogan, 131 Mo. 19; Farrar v. St. Louis, 80 Mo. 379.

In the last mentioned case Judge NORTON for the court said, "The liability of lots fronting on a street, the paving of which is authorized to be charged with the cost of the work according to their frontage, having been thus so repeatedly asserted, the question is no longer an open one in this State, and we are relieved from the necessity of examining authorities cited by counsel for plaintiff condemning what is familiarly known as the 'front foot rule.' "

Learned counsel for defendant concede such was the state of the decided law of this State and that the portion of the Kansas City charter known as the ninth article of the charter which authorizes the cost of a pavement to be assessed against the lots fronting on the improvement according to their respective frontage was framed after this court had fully considered and construed similar laws and sustained them against the charge of unconstitutionality and the assessment now chal-

lenged was made under the construction given by this court.

They say: "The question we present is whether under the decision in Norwood v. Baker, 172 U. S. 269, the provision of the Kansas City charter under which the tax-bill sued on was issued, is in violation of the constitution of the United States and therefore null and void. We do not and can not ask this court to reconsider or recast any of its former decisions on this subject. We simply present this controlling decision of the Supreme Court of the United States and ask that it be applied in this case."

If the facts of this case bring it within the case in judgment in Norwood v. Baker, this court is bound to follow that decision and will do so whatever views we may hold to the contrary.

In applying the principle of *stare decisis* and controlling authority we will be safe in following that doctrine as announced by the Supreme Court of the United States whose judgment on the question at bar will be final. In Cohens v. The State of Virginia, 6 Wheaton (U. S.), 399, Chief Justice Marshall said:

"The counsel for the defendant in error urge, in opposition to this rule of construction, some dicta of the court, in the case of Marbury v. Madison.

"It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection *with the case* in which those expressions are used. If they go beyond the case, they may be respected, *but ought not to control the judgment* in a subsequent suit when the very point is presented for decision. The reason for this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." Further on he says,

in reference to language used in Marbury v. Madison, "Having such cases only in its view, the court lays down a principle which is generally correct, *in terms much broader than the decision,* and not only much broader than the reasoning with which that decision is supported, but in some instances contradictory to its principle," and he concludes this point with the announcement that "the general expressions in the case of Marbury v. Madison must be understood with the limitations which are given them in this opinion."

In the recent case of Parsons v. District of Columbia, 170 U. S. 45, the same court says: "It is trite to say that general principles announced by courts, which are perfectly sound expressions of the law under the facts of a particular case, may be wholly inapplicable in another and different case; and there is scarcely any department of the law in which it is easier to collect one body of decisions and contrast them with another in apparent conflict, than that which deals with the taxing and police powers."

However familiar the facts in the Norwood-Baker case may be, owing to the great interest excited by its promulgation, it will not be amiss to recall its salient features for the purpose of determining its controlling effect in the case at bar.

Mrs. Ellen R. Baker owned a tract of land in the village of Norwood, which intercepted Ivanhoe avenue. This avenue was fifty feet wide and had been laid out to the north and south lines of her tract. To make Ivanhoe avenue a continuous street it was necessary to extend it through the Baker tract and acquire a strip thereof fifty feet wide and three hundred feet long.

For this purpose a condemnation proceeding was instituted. The constitution of Ohio provides that where private property is condemned for public use, "compensation therefor shall first be made in money; and such compensation shall be

assessed by a jury, without deduction for benefits to any property of the owner."

Cities and villages in Ohio, as in Missouri, are by statute given power to lay off, establish, open, widen, narrow, straighten, extend, keep in order and repair, and light streets, alleys, public grounds and buildings, wharves, landing places, bridges and market places within the corporation, and to appropriate private property for the use of the corporation. And each city and village may appropriate, enter upon, and hold real estate within its corporate limits for the following purposes but no more shall be taken or appropriated than is reasonably necessary for the purpose to which it is to be applied.

"For opening, widening, straightening and extending streets, alleys and avenues; also, for obtaining gravel or other material for the improvement of the same and for this purpose the right to appropriate shall not be limited to lands lying within the limits of the corporation." [1 R. S. Ohio (1890), sec. 1692, sub. div. 18 and 33, and section 2232, title, "Cities and Villages."]

It is further provided by the statute of Ohio (1890) that where private property is taken for opening and widening streets, alleys or other public highways, the costs and expenses of the appropriation may be assessed in one of three ways, first, by the council generally upon the public; second, upon abutting, adjacent or contiguous lots, in proportion to the benefits which may result from the improvement or according to the value of the property assessed; third, "by the foot front of the property bounding and abutting upon the *improvement* as the council, by ordinance setting forth specially the lots and lands to be assessed, may determine before the improvement is made." [Sec. 2264, R. S. Ohio, 1890.]

The council of the village of Norwood passed an ordinance which provided for the institution of condemnation proceedings in the probate court, for the ascertainment of the

compensation to be paid to Mrs. Baker for the desired strip and also provided that the compensation paid her and all costs of the condemnation proceeding and all other costs and the interest on the bonds issued, if any, to pay her for her land should be assessed as a benefit to her upon her land abutting on the strip so taken.

It thus appears that the village was invoking at one and the same time, the extraordinary power of eminent domain and exercising its power of assessment to pay for the land thus taken.

In the condemnation proceeding proper the jury assessed her compensation at two thousand dollars and that sum was paid her, and thereupon the village council assessed her with the two thousand dollars and all the costs of the condemnation, amounting to $218.58 as benefits to her abutting property.

The result was that the village acquired her property for nothing and charged her $218.58 for having deprived her of it.

Mr. Justice HARLAN delivered the opinion of the court. He said: "The particular question presented for consideration involves the validity of an ordinance of that village, assessing upon the appellee's land abutting on each side of the new street an amount covering, not simply a sum equal to that paid for the land taken for the street, but, in addition, the costs and expenses connected with the condemnation proceedings."

The lower court adjudged that the assessment was in violation of the fourteenth amendment to the Constitution of the United States and such was the theory of the bill for injunction. *Inter alia* Judge HARLAN says, "It has been adjudged that the due process of law prescribed by the (fourteenth) amendment requires compensation to be made to the owner when private property is taken for public use.    [Railroad

v. Chicago, 166 U. S. 226; Supply Co. v. Brooklyn, 166 U. S. 685.]

"The taking of the plaintiff's land for the street was under the power of eminent domain. . . . . But the assessment of the abutting property . . . . was an exercise of the power of taxation.    Except for the provision of the constitution of Ohio above quoted, the State could have authorized benefits to be deducted from the actual value of the land taken, without violating the constitutional injunction that compensation be made for private property taken for public use; for the benefits received could be properly regarded as compensation *pro tanto* for the property appropriated to public use.    But," asks the learned justice, "does the exclusion of benefits from the estimate of compensation to be made for the property actually taken for public use, authorize the public to charge upon the abutting property the sum paid for it, together with the entire costs incurred in the condemnation proceedings, irrespective of the question whether the property was benefited by the opening of the street?"    The learned justice then concedes that it is the settled law of the Supreme Court of the United States that "abutting owners may be subjected to special assessments to meet the expenses of opening public highways in front of their property—such assessments resting upon the ground that special burdens may be imposed for special or peculiar benefits accruing from public improvements;" citing Mobile County v. Kimball, 102 U. S. 691; Railroad v. Decatur, 147 U. S. 190; Bauman v. Ross, 167 U. S. 548, and the cases there cited.    He adds that "according to the weight of judicial authority, the legislature has a large discretion in defining the territory to be deemed specially benefited by a public improvement, which may be subjected to special assessment to meet the cost of such improvements."

He proceeds then to show that the power of the legisla-

ture *is not unlimited* and that there is a point beyond which the legislative department may not go in exerting its power of taxation consistently with the property rights of the citizen.

He concludes: "In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him *is, to the extent of* the *excess*, a taking, under the guise of taxation, of private property for public use without compensation."

The learned justice speaking for the majority of the court expressly disclaimed that his opinion was in conflict with Parsons v. Dist. of Columbia, 170 U. S. 45, or Spencer v. Merchant, 125 U. S. 345.

From a careful reading of the case, we conclude that the Supreme Court decided three propositions:

First: That "due process of law" as used in the fourteenth amendment to the Federal Constitution, requires compensation to be made to the owner of the land condemned for public use.

Second: That the exaction from the owner of abutting property of the cost of a public improvement, in substantial excess of the special benefits received by him, is *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use *without compensation.*

Third: That in that case the special assessment·upon the abutting property of Mrs. Baker, the entire cost of opening the street, including not only the full amount paid her for the strip condemned but the costs and expenses of the condemnation proceedings was a taking of her property for public use without compensation; in a word, that while nominally it was the exercise of the taxing power, it was nothing less than confiscation.

Notwithstanding the fact that the discussion took a wide

range and much that was said affords ground for the contention of learned counsel that *all statutes* and *ordinances* which assess abutting owners with the cost of paving a street according to the front foot rule as the charter and ordinance of Kansas City do in the case at bar, are null and void, we are of opinion that it was not the intention of the majority of the court to so hold. We think that Norwood v. Baker must be read with a view to the particular facts in judgment in that case, and that it was not the intention of the Supreme Court of the United States to overturn the long line of its own decisions which are in harmony with so many of the decisions of the courts of last resort in the several states of the Union and upon the faith of which vast property rights have accrued.

Indeed, as we understand the opinion the court expressly declined to shake the authority of Parsons v. The District of Columbia, 170 U. S. 45, in which that court sustained an assessment per front foot upon property abutting upon a street improvement. In that opinion each of the justices who concurred in the majority opinion in Norwood v. Baker, concurred.

In the Parsons case the Supreme Court adopted the language of Judge Dillon in his work on Municipal Corporations (4 Ed.), vol. 2, sec. 752, as follows:

"The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements, is a branch of the taxing power, or included within it.

"Whether the expense of making such improvement shall be paid out of the general treasury, or be assessed upon the abutting property or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited or alone upon the abutters, according to frontage or according to the area of their lots,

Vol. 158 mo—35

is according to the present weight of authority considered to be a question of legislative expediency."

And the court expressly approved the doctrine of Spencer v. Merchant, 125 U. S. 345, which case originated in New York. The Court of Appeals of New York in an opinion by Judge FINCH held that assessments of abutting property is an exercise of the power of taxation and is vested in the legislature which determines the amount to be levied and fixes the tax district and its decision is final. The Supreme Court of the United States in its opinion in the same case said, "The legislature in the exercise of its power of taxation has the right to direct the whole or a part of the expense of a public improvement such as the laying out, grading or repairing of a street to be assessed upon the owners of lands benefited thereby and *the* determination of the territorial districts which should be taxed for a local improvement *is within the province* of legislative discretion."

In Williams v. Eggleston, 170 U. S. 304, the same court said: "Neither can it be doubted that, if the state constitution does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district and what property shall be considered as benefited by a proposed improvement." To the same effect see Mobile County v. Kimball, 102 U. S. 691. In Bauman v. Ross, 167 U. S. 548, the court said: "But it is for the legislature, and not for the judiciary, to determine whether the expense of a public improvement should be borne by the whole State, or by the district or neighborhood immediately benefited.

"The legislature, in the exercise of the right of taxation, has the authority to direct the whole, or such part as it may prescribe, of the expense of a public improvement, such as the establishing, the widening, the grading or the repair of a

Barber Asphalt Pav. Co. v. French.

street, to be assessed upon the owners of lands benefited thereby.

"The rule of apportionment among the parcels of land benefited also rests within the discretion of the legislature, and may be directed to be in proportion to the position, the frontage, the area or the market value of the lands, or in proportion to the benefits as estimated by commissioners."

Some stress is laid upon the distinction between the power of the legislature in the exercise of the taxing power and that of municipalities upon which that power is conferred. But few principles are better settled in the courts of this country than this, that where legislative powers are delegated to a municipal corporation, its discretion within the legitimate sphere of its authority is proportionately as wide as is the like discretion possessed by the legislature of the state "and as free from outside interference, and that discretion is not subject to judicial revision or reversal." [Morse v. Westport, 136 Mo. 286.]

It is true that in many jurisdictions, certainly in this State, it is true, that municipal acts, whether in the form of ordinances or resolutions, may be impeached for fraud at the instance of persons injured thereby. [1 Dillon Mun. Corp. (4 Ed.), sec. 311; Glasgow v. St. Louis, 107 Mo. 203.] Whereas courts will not inquire into the motives of the legislature.

That the legislature may delegate this power to open, improve and pave streets to municipal corporations is no longer an open question.

That the charter of Kansas City fully and expressly conferred this power upon that city will not be questioned; that charter has all the dignity and force of a legislative enactment. In the case at bar there was not the slightest intimation that the ordinance was procured by fraud or amounted to arbitrary confiscation, whereas in the Norwood

case, the ordinance was arbitrary and oppressive and could only result in depriving Mrs. Baker of her land for a public use without compensation. Under the scheme there devised although Mrs. Baker might have been allowed every process of law to recover the value of her land taken, and a hearing as to how the value of the land taken should be apportioned over the benefit district, she could never, unless the district was enlarged, have recovered a cent for her land that was taken and all additional efforts would simply have increased the costs which she was adjudged to pay, and thus the case properly fell within the rule announced by Mr. Justice HARLAN in Railroad Co. v. Chicago, 166 U. S. 226, that "the mere form of the proceeding instituted against the owner, even if he be admitted to defend, can not convert the process into due process of law, if the necessary result be to deprive him of his property without compensation."

But in taxing the citizen with his proportionate share of the cost of a pavement abutting on his lot, there is no taking of property for public use.

Nor is there anything which smacks of arbitrary or fraudulent conduct. This method of taxation has passed under the scrutiny of the courts of this country and has received their approval. Judge Cooley in his work on Taxation, p. 644, says: "Such a measure of apportionment seems at first blush to be perfectly arbitrary, and likely to operate in some cases with great injustice; but it can not be denied that in the case of some improvements, frontage is a very reasonable measure of benefits—much more just than value could be—and perhaps approaching equality as nearly as any other estimate of benefits made by the judgment of men." Judge Elliott in his book on Roads and Streets, p. 396, says: "The system which leads to the least mischievous and unjust consequences is that which takes into account the entire line of the way improved and apportions the expense according

Barber Asphalt Pav. Co. v. French.

to the frontage; for it takes into consideration the benefit to each property owner that accrues from the improvement of the entire line of the way and does not impose upon one lot owner an unjust portion of the burden."

Judge SHARSWOOD speaking for the Supreme Court of Pennsylvania in Hammett v. Philadelphia, 65 Pa. St. 146, says, "Perhaps no fairer rule can be adopted than the proportion of feet front, though there must be some inequalities if the lots differ in situation and depth." Such has been the holding of this court throughout its history.

A rule so universally adopted and sustained can hardly be called arbitrary or so unjust as to warrant a court to strike down the discretion of the municipality which adopts it.

It is, however, insisted that the Norwood-Baker case does condemn this front foot rule because it affords no opportunity for a hearing. Still conceding as we do, that there are expressions to this effect in that opinion, it seems so clear to us that the opinion was not predicated upon the want of notice and that no amount of notice could have availed to secure justice to Mrs. Baker under the scheme devised that we do not believe that the Supreme Court intended to lay down the law that a state statute imposing taxes must necessarily and in all cases give notice and a hearing to the taxpayer before it can be held valid.

We think the decisions of that court are overwhelmingly to the contrary and we discern no purpose in this opinion to overrule and set aside all of its prior utterances on this subject.

Thus in Parsons v. District of Columbia, 170 U. S. loc. cit. 54, the court unanimously said: "In Hagar v. Reclamation District, 111 U. S. 701, the distinction between a tax or assessment imposed by a direct exercise of the legislative power, calling for no inquiry into the weight of evidence, nor for anything in the nature of judicial examination, and a tax or

assessment imposed upon property according to its value to be ascertained by assessors upon evidence, was pointed out, and it was held that in the former case no notice to the owner is required, but that in the latter case the officers, in estimating the value, act judicially, and notice and an opportunity to be heard are necessary. In giving the opinion of the court it was said by Mr. Justice FIELD (p. 709) : 'Of the different kinds of taxes which the State may impose, there is a vast number of which, from their nature, no notice can be given to the taxpayer, nor would notice be of any possible advantage to him, such as poll taxes, license taxes, and generally specific taxes on things, or persons, or occupations.' In such cases the legislature, in authorizing the tax, fixes its amount, and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of evidence, or other element of a judicial nature and nothing could be changed by hearing the taxpayer. No right of his is therefore invaded."

The court further quote Judge Cooley on Taxation with approval, to the effect "that the whole cost (of a local improvement) in other cases is levied on lands in the immediate vicinity of the work. In a constitutional point of view, either of these methods is admissible and one may be sometimes just, and another at other times."

"The question is legislative, and like all legislative questions may be decided erroneously." The court thus approves Judge Dillon's text, Mun. Corp., vol. 2, sec. 752, wherein the learned author says, "Whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, *according to frontage* or according to the area of their lots, is according to the present weight of authority considered to be a question of legislative expediency," and in

Norwood v. Baker, Parsons v. Columbia is expressly approved by Mr. Justice HARLAN, on the ground that it was done under an act of Congress establishing a comprehensive system for the district. From the reasoning of the learned justice it is hard to escape the conclusion that he regarded the fact that the entire cost of the land taken and all the costs of the condemnation were assessed upon Mrs. Baker's land as peculiar to that case, and that a different rule would govern if the assessment per front foot had been levied under a general or comprehensive system for betterments as was the case in Parsons v. Columbia and which clearly exists under the charter and ordinance of Kansas City which provide a comprehensive system for the paving of all the streets of said city and an assessment per front foot upon all abutting property to pay therefor. It seems indisputable that if no inquiry into benefits was required in the Parsons case, and that act was constitutional, neither can the charter and ordinance of Kansas City which also provide a comprehensive system of improvement be held unconstitutional. In neither case is there any inquiry as to benefits nor is the tax levied according to actual benefit but both alike rest upon the conclusive presumption indulged by Congress in the one case and the charter in the other, that such an improvement is a benefit to the abutting property. Not only is this true but the Supreme Court of the United States is solemnly committed to the doctrine that if the assessment actually exceeds the cost of the work it would not vitiate or annul the assessment. [Parsons v. Columbia, 170 U. S. loc. cit. 56, 57; Leominster v. Conant, 139 Mass. 384; Hyde Park v. Spencer, 118 Ill. 446.]

Whether there is really a distinction between the Parsons case and the Norwood-Baker case if the fact of the taking of Mrs. Baker's land without compensation be dissociated from the latter, we will not now discuss, but accepting the whole of the Norwood case, its approval of the Parsons case, as well

as the statement that the front foot rule excluded an inquiry into benefits, we are of opinion that the Supreme Court of the United States will not condemn the assessment in the case at bar because it falls clearly within the doctrine of the Parsons case and the construction placed on that case in the Norwood case and because no court has more emphatically determined that an assessment by the front foot rule is an exercise of the taxing power and is a legislative function with which the courts have no power to interfere and will not do so.   Certainly it is true that until the decision in the Norwood-Baker case, the decisions of the Supreme Court hold that the fourteenth amendment to the Constitution of the United States does not prohibit assessments on real estate in excess of special benefits, or by methods other than according to special benefits.

In the case of Davidson v. New Orleans, 96 U. S. 97, the estate of John Davidson was assessed about $50,000 for draining certain swamp lands in the State of Louisiana.   The assessment was levied according to the superficial area or square foot of land within the drainage district, that is each square foot was taxed as much as every other square foot in the district.

No inquiry was had into benefits and the assessment was not according to benefits. It was even agreed that no drainage was done on Davidson's land, and that a part of his land needed no drainage, having already been drained.

The question was squarely raised and presented whether the fourteenth amendment prohibited such an assessment. Justice MILLER wrote the opinion, in which all the justices concurred, and held that the Supreme Court of the United States had no jurisdiction of the case, because the fourteenth amendment was not violated; that that class of cases did not fall within the provisions of the amendment.   In the course of his opinion the learned judge says, "It is also said that

part of the property of plaintiff which was assessed, is not benefited by the improvement. This is a matter of detail with which this court can not interfere, if *it were clearly so;* but it is hard to fix a limit within these two parishes where property would not be benefited by the removal of the swamps and marshes which are within their bounds."

At that time it is clear that the whole court held that the fact that an assessment was for an improvement which in fact was no benefit to the property owner did not bring the case within the fourteenth amendment and it would be hard to conceive of a harder case.

Subsequently in Spencer v. Merchant, 125 U. S. 345, Mr. Justice GRAY said: "In Davidson v. New Orleans, it was held that if the work was one which the State had authority to do, and to pay for by assessments on the property benefited, objections that the sum raised was exorbitant, and *that part of the property assessed was not benefited,* presented no question under the fourteenth amendment to the Constitution, upon which this court could review the decision of the State court."

And in Walston v. Nevin, 128 U. S. 578, Chief Justice FULLER said in reference to the Davidson case: "And the conclusion was reached that neither the corporate agency by which the work is done, the excessive price which the statute allows therefor, nor the relative importance of the work to the value of the land assessed, nor the fact that the assessment is made before the work is done, nor that the assessment is unequal as regards the benefits conferred, nor that personal judgments are rendered for the amount assessed, are matters in which the State authorities are controlled by the Federal Constitution. So the determination of the taxing district and the manner of the apportionment are all within the legislative power." [Spencer v. Merchant, 125 U. S. 345; Stanley v. Supervisors, 121 U. S. 535; Mobile v. Kimball, 102 U. S.

691; Hagar v. Reclamation Dist., 111 U. S. 701; United States v. Memphis, 97 U. S. 284; Laramie Co. v. Albany Co., 92 U. S. 307.]

"And whenever the law operates alike on all persons and property, similarly situated, equal protection can not be said to be denied." [Wurts v. Hoagland, 114 U. S. 606; Railroad v. Richmond, 96 U. S. 521.]

In Walston v. Nevin, the assessment for the construction of a street was apportioned upon abutting land according to the number of square feet. No inquiry could have been made as to benefits any more than in the Norwood case, and yet the court ruled it fell within the Davidson case and it had no jurisdiction.

Finally, in Fallbrook Irrigation District v. Bradley, 164 U. S. 112, an *ad valorem* assessment upon all the land within the district was held not contrary to the fourteenth amendment.

The point was specifically made that the assessment was not made in accordance with and in proportion to the benefits conferred by the improvement and land which could not be benefited was placed in a district to be taxed to pay for the improvements which would benefit others.

The importance of the case is suggested by the great array of eminent counsel on both sides.

Mr. Justice PECKHAM delivered the opinion. Among other things he said: "As was said by Mr. Justice MILLER in Davidson v. New Orleans, where the objection was made that part of the property was not in fact benefited, 'this is a matter of detail with which this court can not interfere if it were clearly so; but it is hard to fix a limit within these two parishes where property would not be benefited by the removal of the swamps and marshes which are within their bounds.' To the same effect, Spencer v. Merchant, 125 U. S. 345; Lent v. Tillson, 140 U. S. 316-333. In regard to the matters thus

far discussed, we see no valid objection to the act in question." Again, he says: "The fourth objection and also the objection above alluded to as the final one, may be discussed together, as they practically cover the same principle. It is insisted that the basis of the assessment upon the lands benefited, for the cost of the construction of the works, is not in accordance with and in proportion to the benefits conferred by the improvement, and, therefore, there is a violation of the constitutional amendment referred to, and a taking of the property of the citizen without due process of law. Although there is a marked distinction between an assessment for a local improvement and the levy of a general tax, yet the former is still *the exercise of the same power as the latter*, both having their source in the sovereign power of taxation."

And again, "We do not discover, and our attention has not been called to any case in this court where such an assessment has been held to violate any provision of the Federal Constitution. If it do not, this court can grant no relief."

It is in view of this unbroken chain of authority, this unanimous declaration of the Supreme Court that the fourteenth amendment to the Federal Constitution does not prohibit assessments on real estate for local improvements in excess of special benefits or by methods other than according to the amount of the benefit, and the failure of that court to criticise or overrule any of said decisions, that we say that in a case like the one at bar, involving only an assessment or no question of taking private property for public use without compensation, there is no federal question and that the Norwood-Baker case does not apply to such a case and does not require that we should overrule the long line of cases decided by this court which sustain the front foot rule, and that until that court in a case like this shall reverse its former long line of decisions, we must adhere to our own construction of our constitution and laws. Of course, if the Supreme Court shall

in a case like this, hold that the fourteenth amendment does apply and that the assessment by the front foot rule under the Kansas City charter is void, we shall conform to its judgment as the final arbiter under the Constitution.

As the assessment was made in strict compliance with the charter and ordinance, we do not think the testimony of the four witnesses to the effect that the benefits to the lots exceeded the cost of the improvement could cure the vice if any in the charter and the ordinance.

Plaintiff must stand or fall by the charter provision. The admission of the evidence, however, did not constitute reversible error as we hold the charter and the ordinance were sufficient without the evidence and would have been had it been to the contrary.

## II.

The other objection remains.

It is urged that the requirement of the ordinance and contract providing for maintaining and repairing the street on which the paving was done for five years is *ultra vires,* on the part of the city and void. That the power of the city to contract for repairs is limited to two years. Speaking for myself, I think the contention of the defendant is sound, but this court has ruled otherwise in Seaboard National Bank v. Woesten, 147 Mo. 467, and Barber Asphalt Co. v. Ullman, 137 Mo. 543, and no good purpose will be subserved by repeating the grounds upon which I based my dissent in those cases. The question must be considered settled by the majority opinions in those cases.

It follows that the judgment of the circuit court must be and is affirmed. All concur, except *Burgess, J.,* absent.