## BAILEY v. MAYOR AND COM'RS OF CITY OF SIOUX FALLS et al.

If a city had no authority to assess property for sewer drainage because not benefited by the proposed sewer, the assessment would merely be void, and would not be fraudulent in any sense, authorizing relief on that ground.

Public notice of the time and place of a hearing before municipal authorities on the question of assessments for public improvements, such as sewers, is sufficient to constitute "due process of law."

If there is a possibility for dispute whether a certain parcel can be drained by a proposed sewer, the action of the city in including it within such drainage district is conclusive upon the courts.

Acts 1909, c. 110, relates to the establishment of sewer districts, and section 10 provides that, whenever any contract for the construction of "any main or trunk sewer" is made, the city engineer shall make estimates for a special assessment upon the parcels within the sewer district, etc., and report to the city council the following facts: (1) The cost of "said main or trunk sewer." (2) The number of feet frontage "within the sewer district" upon the streets in which "such main or trunk sewer is to be constructed." (5) An estimate of the cost of the construction of a sewer along the same course as that "in which said main or trunk sewer is to be constructed of a size sufficient to provide sewerage for the property if it

were not to be used as a 'main or trunk sewer,' and of construction suitable for the construction of 'lateral sewers' in said district." (6) The amount required to construct "said main or trunk sewer" in addition to that assessed on lots abutting on the streets in which "said main or trunk sewer" is to be constructed. Section 11 provides that the total benefit of "a main or trunk sewer" shall be deemed the contract price. Section 13 provides for cases when it becomes necessary, in order to furnish an outlet for the "main or trunk sewer constructed within any sewer district" under the act, that adjoining or outlying property be acquired, etc., and section 7 provides that whenever a petition is made "for the construction of a main or trunk sewer, or a part of a main or trunk sewer therein," the council shall pass a resolution of necessity, and may order the construction of "said sewer,"etc. **Held,** that the city was not authorized to construct more than one main sewer and the necessary laterals in one sewer district, so that proceedings to assess property for the cost of more than one main sewer in the district are void, since property drained by one main sewer would be excessively taxed for the excess cost of another main sewer not directly benefiting it.

Const. art. 6, § 17, requiring all taxation to be equal and uniform, applies to special assessments by municipalities within a taxaton district, such as special assessments for sewers.

(Opinion filed, October 3, 1911.)

Appeal from Circuit Court, Minnehaha County. Hon. FRANK B. SMITH, Judge.

Action by Anna O. Bailey against the mayor and city commissioners of Sioux Falls and others. From an order denying a motion for a temporary injunction, plaintiff appeals. Reversed and remanded for issuance of injunction.

*Bailey & Voorhees,* for appellant.

Assessments for local improvements can be justified only upon the theory that the lands upon which they are laid are specially benefited by the improvements for which they are laid and hence ought to bear the burden rather than property generally; and if a law should authorize such assessments to be laid, without reference to benefits, it would either take property for the public good, without compensation, or it would take property from one person for the direct benefit of another; and in either aspect it would be unconstitutional. Stuart v. Palmer, 74 N. Y. 183; Kirby v. Shaw, 19 Pa. 258; Schenley v. Commonwealth, 36 id.

29; McGonigle v. Allegheny City, 44 id. 118; In the Matter of Washington Avenue, 69 id. 360; Patterson v. Society, etc., 24 N. J. 385; Tidewater Co. v. Coster, 18 N. J. Eq. 519; In the Matter of the Drainage of Lands, 35 N. J. 497; St. John v. East St. Louis, 50 Ill. 92; Lee v. Ruggles, 62 id. 427; In the Matter of Albany Street, 11 Wend. 149; Litchfield v. Vernon, 41 N. Y. 123.

*D. J. Conway* and *R. H. Warren,* for respondents.

The legislature has the power to determine for itself, or to delegate power to the municipal authorities, to determine the boundaries of a special assessment district, and to determine what property shall be included within such district as benefited by the improvement to be made; to declare not only that the property within such district shall be conclusively deemed to be benefited by the improvement, but that it is benefited to the full amount of the cost of the improvement; and also to declare the rule by which such entire cost shall be distributed over the property so found to be benefited and included within the district. Winona & St. P. R. Co. v. City of Watertown et al., 1 S. D. 46; Rolph v. City of Fargo, 42 L. R. A. 646; Webster v. Fargo, 82 N. W. 732; Webster v. City of Fargo, 181 U. S. 394; French v. Barber Asphalt Paving Co., 181 U. S. 341. Special benefits constitute the only basis in theory of law for special assessments for local improvements; and therefore the important question always arises as to what property is benefitted and ought to be included within a special assessment district. This is purely a question of fact to be determined by the legislature, or by the municipal officers to whom the legislature has delegated the power of establishing special assessment districts and making local improvements therein to be paid for by special assessments on the property within the district. The adoption of plans for such a district and the determination of the boundaries of the district constitute the findings of such officers upon this question of fact.

Fallbrook Irrigation District v. Bradley, 164, U. S. 112; French v. Barber Asphalt Pav. Co., 181, U. S. 341; French v. Barber Asphalt Pav. Co., 58, S. W. 934.

Notice by publication to property owners such as the notice prescribed by Chapter 110, Laws of 1909, and an opportunity to be heard before the city council or board of commissioners upon the question of the formation of the improvement district and the fixing of its boundaries constitute due process of law.   Paulsen v. Portland, 149, U. S. 30, 637; French v. Barber Asphalt Pav. Co., supra; Fallbrook Irrigation Dist. v. Bradley, supra.

SMITH, P. J.   Action for an injunction restraining the construction of a system of sewers.   Plaintiff appeals from an order of the circuit court denying her motion for a temporary injunction. The facts before the trial court are stated in the record substantially as follows:   The city of Sioux Falls is situated on the banks of the Big Sioux river; the major portion of the city, and nearly the whole business district, being situated upon the west bank of the river.   At a distance varying from a few hundred feet to a mile west of the river is a range of bluffs, west of which the ground declines toward the Big Sioux river, which makes a detour around the city a mile or so west of the city limits.   The topography of that portion of the city is such that the same sewers cannot drain property, both east and west of the range of bluffs.   The main business section of the city and the greater part of the most valuable residence district are situated between the river and the range of bluffs.   Plaintiff is the owner of three lots in the main business district, upon two of which are improvements of considerable value.   Neither of these lots can be drained into any one of the proposed sewers.   The commissioners of the city of Sioux Falls, under the provisions of chapter 110, Laws 1909, established a sewerage district known as the "West Side District," which comprised that portion of the city lying west of the Big Sioux river. Plans were adopted under which it was proposed to construct several distinct sewers within boundaries established as a sewer district.   The most extensive is a main sewer about six miles in length, commencing in the southern part of the city, running in a northerly direction west of the range of bluffs, to the northern part of the city, and emptying into the river through a tunnel under the bluffs.   This main sewer is not connected with any of

the proposed sewers east of the bluffs, and none of the property east of the bluffs can be drained into it. A second main sewer is to be constructed from the end of an existing sewer on Phillips avenue to an outlet into the river 600 or 700 feet from the present outlet of an existing old sewer. Five separate and distinct main sewers from Phillips avenue west, along Eight, Ninth, Tenth, and Eleventh streets to Prairie avenue, approximately one-half mile on each street, and other distinct and separate sewers, are proposed to be constructed along streets in the northwest portion of the city. None of these last-named sewers connect with each other. The city of Sioux Falls is divided into two parts by the Big Sioux river. That part on the east side of the river has a separate sewerage system of its own constructed at the expense of the general public. On the west side of the river, and within the boundaries of the proposed West Side sewerage district, is a part of a system of sewerage constructed at the expense of the general public, but at present apparently without any proper or sufficient outlet. The original cost of the existing part system was from $75,000 to $100,000. The plaintiff's property is situated along the lines of this old established partial system of sewers, and appears to be supplied with sufficient drainage. It is conceded that the various sewers to be constructed, together with those already constructed in the West Side sewerage district, will afford adequate and complete drainage for every portion of the proposed district. The only question on this appeal is as to the authority of the commissioners under the provisions of chapter 110, Laws 1909, and appellant expressly waives all informalities or irregularities in the proceedings. Appellant's contention is that in the formation of a sewer district the commissioners must establish a district for each separate and distinct main or trunk sewer, and construct each of such sewers at the expense of the property specially benefited by it, and that in forming the proposed sewer district the commissioners in this case adopted plans not for one main or trunk sewer which should serve the requirements of all the property in the district, but for a system of independent and distinct main sewers, each of which could drain only isolated and distinct portions of the district. Appellant further contends that the pro--

ceedings of the commissioners in attempting to include distinct and separate main sewers in a single district were fraudulent upon their face. The gist of appellant's argument is that property receiving a special benefit by drainage into or through the proposed sewer is the only property which can be assessed or taxed to pay the cost of its construction, and that, under this act, no sewerage district can be formed containing more than a single main sewer with its proper and necessary laterals, and that the sole test of benefits received is the possibility of drainage through a main sewer, either directly or by means of laterals or extensions.

[1] The argument that the proceedings of the commissioners are fraudulent upon their face appears to be founded only upon the fact that they disclose that various distinct and separate main sewers are proposed to be included in one sewerage district and the property of the entire district taxed or assessed for the construction of various separate and distinct main sewers, thus wrongfully and fraudulently attempting to tax property in what should constitute one sewer district for the cost of construcing several main sewers, and for the construction of sewers from which the property taxed can receive no benefit. The constitutional authority for the enactment of legislation for the construction of and taxation for local improvements is found in section 10, Art. 11, Const.; "The Legislature may vest the corporate authority of cities, towns and villages with power to make local improvements by special taxation of the contiguous property or otherwise. * * * " Under this provision it is clear that the power of the Legislature to vest municipalities with authority to make local improvements, and to pay for the same by special taxation of contiguous property or otherwise, is plenary, except in so far as it may be limited or controlled by other provisions of the Constitution. The rightful exercise of this power in the enactment of Chapter 110, Laws 1909, is not challenged on this appeal, nor is it claimed that the act itself is invalid because it contravenes any constitutional provision. Neither the right of the municipality to create a sewerage district nor its authority to levy and collect a tax or assessment in the mode provided by the act is called in question. Appellant's con-

tention is reduced to a single proposition, namely, that the commissioners, of the city of Sioux Falls have placed an improper construction upon the act itself in attempting to create a sewer district which contains a number of independent and separate main sewers. If it be assumed, as contended by counsel for appellant, that a sewerage district may consist only of a territory or district capable of being drained by a single main sewer with necessary laterals or extensions, it must be conceded that the act provides a fair and equitable mode of distributing the cost of sewerage as a local improvement. The act provides, in substance, that, as to all property abutting upon the main sewer, a front-foot assessment equaling the cost of a sewer of sufficient size only to drain such abutting property shall be made, and that the whole cost of constructing all laterals shall be assessed by the front-foot rule on property abutting upon such laterals. As to the front-foot assessments, therefore, all property, whether abutting on a lateral or main sewer, is assessed equally, in an amount only sufficient to pay for its own drainage. The excess cost of the main sewer above the amounts thus assessed upon foot frontage is levied as a general assessment or tax against all property in the district in proportion to the assessed valuation of each lot or tract exclusive of improvements thereon. The record, as we view it, presents no question of fraud. The only possible purpose or intent on the part of the commissioners which could be claimed to be improper or fraudulent is that they intended and attempted to tax property not benefited by the proposed improvement. If they had authority to make such an assessment, their action in creating the drainage district could not be deemed fraudulent, and, if without such authority, the assessment would simply be void. Respondent concedes that none of appellants property can be drained by or into any of the main sewers or laterals to be constructed in the proposed district, and, in fact, the plan adopted by the commissioners on its face shows that it does not and is not intended to drain any of plaintiff's property into or through any of the proposed new sewers. The authority conferred upon the municipality by this act is to create a drainage district and define its boundaries, such authority being extended by the statute to the creation of any

number of districts found necessary. Appellant contends that a drainage district contemplated by the act is a district or defined territory, every part of which may be drained either directly or indirectly into or through the main and lateral sewers to be constructed within that district; that only property within such district can be assessed or taxed for cost of main or lateral sewers in that district; that any other construction of the act would render it unconstitutional as an attempt to authorize an assessment to be made without reference to benefits, and would constitute either a taking of private property for public good without compensation, or would take property from one person for the direct benefit of another. The act provides that, upon the filing of a plan or diagram of the proposed district, notice shall be given by publication of a day when all persons may appear and the city commissioners or council shall consider all objections thereto. If upon such hearing the plan or diagram is adopted, it is filed with the city auditor and becomes a diagram of the sewer district, and the lots, tracts, and parcels of land therein become liable to assessment. When the district has been established and a majority of the resident electors in the district shall petition therefor, the city council by resolution shall declare the necessity therefor, and cause plans and specifications to be made by the city engineer and filed in his office for inspection of all persons interested, and shall publish notice of a time and place when and where all property owners in the district may appear and make objections to the construction of the sewer or to the plans and specifications therefor. The city council may thereupon adopt, modify, or reject such plans by resolution, and from the time of the adoption of such plans and specifications the city council is declared to have "jurisdiction to make the improvements therein specified and to assess the cost thereof and to levy and collect such assessments as herein provided." The rule for apportionment of assessments is strictly statutory, and leaves nothing to the judgment or discretion of the city authorities. It is conceded in the record in this case that the statute was complied with in all respects, and that appellant neither appeared nor filed any objections at any hearing required by the act. Respondent contends that the remedy of the taxpayer for a

wrongful inclusion of his property within a drainage district is to appear before the commissioners at the time specified in the published notice, and file objections as provided by the statute; that the notices and hearings thus provided are sufficient to constitute "due process of law;" that the final action of the commissioners upon all matters submitted for hearing and determination is conclusive, and cannot be reviewed by the courts in the absence of statutory provisions for review or appeal, no such provisions being contained in the act.

[2] The doctrine that published notice of the time and place of a hearing before municipal authorities upon matters properly within their jurisdiction and authority is sufficient to constitute "due process of law" is sustained, if not universally, at least by an overwhelming weight of authority. A review of the cases is unnecessary. Paulsen v. Portland, 149 U. S. 30, 13 Sup. Ct. 750; French v. Barber Asphalt Co., 181 U. S. 341, 21 Sup. Ct. 625. They establish the proposition that the property owner may not complain that such proceedings constitute an attempt to deprive him of propetry without due process of law. Neither the proceeding in this case, nor the statute itself, is attacked on this appeal as unconstitutional for want of due process. It is conceded by respondent that special benefits constitute the only basis in theory of law for special assessments for local improvements. It is argued, however, that in such proceedings the question must always arise as to what property is benefited and ought to be included within a special assessment district, and that this question is one of fact, to be determined by the Legislature or by the municipal officers to whom the Legislature has delegated the power to establish special assessment districts, and that the adoption of plans and specifications for a district and the determination of the boundaries thereof consitute the finding of such officers upon this question of fact. Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56; French v. Barber Asphalt Pav. Co., 181 U. S. 341, 21 Sup. Ct. 625; Barber Asphalt Pav. Co. v. French, 158 Mo. 534, 58 S. W. 934, 54 L. R. A. 492.

[3] It must be conceded that, whenever there is room for or even a possibility of dispute as to whether a given lot or parcel

of land can or cannot be drained into or through a proposed sewer or by means of extension, laterals or otherwise, the action of the municipal authorities in including such tract or parcel within a given drainage district is final and conclusive, and cannot be questioned by the courts. Neither this argument nor the authorities cited appear to be conclusive of the specific point involved in this appeal, namely, the construction to be placed upon the words "sewerage district." Where the municipality seeking to exercise the authority conferred by the Legislature has attempted to include within the boundaries of a sewerage district distinct areas, the topographical features of which are such that by no possibility can either of the separate areas be drained by sewers laid in the other, a different question is presented. Respondent's argument is that if such separate and distinct areas be included within a single district, and the plans and specifications are such as to afford adequate drainage for each and every parcel or tract of land in the whole of these areas, then every property owner must be held to be benefited by the proposed improvement, and, the question of benefits being one of fact, the inclusion of all such property within one district is conclusive. It is plain that, if separate sewerage districts had been created, each intended to be drained by the sewers within its own area, and each area taxed for its own sewers alone, the action of the municipal authorities would be conclusive upon the question of benefits, and therefore conclusive upon the question of the assessment of property in each district for its own improvements. It may be true that in one sense each area would be benefited by improvements made within the other, but the question would still remain whether it was the legislative intent under the provisions of this act to attempt to make the latter class of benefits the basis for special assessments. Can the benefits contemplated by the act be held to be other than those to be derived from a single main sewer and its necessary laterals within a district? Was it the legislative intent to authorize a municipality to construct more than one main sewer with its necessary laterals in a single drainage district? If these questions are answered in the negative, it must be held that the action of the commissioners in this case was unauthorized and void, and that the municipal au-

thorities were without power to assess appellant's property for the cost of more than a single main sewer. This question primarily involves a construction of the language used in the act itself.

[4] A careful examination of its language in relation to the various proceedings contemplated by the act convinces us that appellant is right in his contention, and that the commissioners are without power to include within the boundary of a district more than a single main or trunk sewer, which, together with its laterals, shall be found by the commissioners sufficient to drain the property included within the district, and that there is no authority attempted to be given to assess against any property the cost of the construction of more than one main or trunk sewer in any one district. Section 10 of the act provides: "Whenever any contract for the construction of *any main or trunk sewer,* under the provisions of this act, shall have been entered into, the city engineer shall forthwith proceed to make an estimate for a special assessment upon the several lots, parts of lots and parcels of land *within the sewer district within or for the benefit of which said sewer is to be constructed,* and shall report to the city council the following facts regarding such improvement. (1) The total cost of *said main or trunk sewer* calculated at the contract price. (2) The total number of feet frontage of property *within the sewer district* fronting or abutting upon the streets or alleys in which *said 'main trunk sewer'* is to be constructed. * * * (5) An estimate of the cost of the construction of a sewer along the same course as that in which *'said main or trunk sewer'* is to be constructed, of a sufficient size and depth to provide sewerage for said property if it were not to be used as a *'main or trunk sewer'* and of construction suitable for the construction of *lateral sewers in said district.* * * * (6) The amount which will be required to construct *said main or trunk sewer* in addition to the amount to be assessed against lots, parts of lots and parcels of land fronting or abutting on the street in which *'such main or trunk sewer'* is to be constructed. * * * " Section 11: "The total benefit of *'a main or trunk sewer constructed under the provisions of this act,* shall be deemed to be the contract cost thereof, and such cost

shall be assessed against all the lots, parts of lots and parcels of land *within the district.* * * * "Section 13: "When it shall be necessary or advisable in order to furnish an outlet for or connection with *'the main or trunk sewer constructed within any sewer district under the provisions of this act, that adjoining or outlying property be taken or acquired,"* etc. Section 7: "Whenever any city shall have established a sewer district or districts as hereinbefore provided and a majority of the resident electors residing within said district shall have petitioned the city council or board of commissioners *'for the construction of a main or trunk sewer, or a part of a main or trunk sewer therein,'* the city council or board of commissioners shall by resolution declare the necessity therefor and * * * may order the construction of 'said sewer' in accordance therewith, and from the time of the adoption of said resolution the city council or board of commissioners shall have jurisdiction to make the improvements therein specified and to assess the cost thereof and to levy and collect such assessment as herein provided."

The language of these various provisions of the act in every instance makes it clear to our minds that only *one main or trunk sewer is authorized to be constructed within a district.* This view is strongly reinforced by the language used in the decisions of courts of high authority. In the case of Hanscom v. City of Omaha, 11 Neb. 37, 7 N. W. 739, a case wherein many of its features closely resemble the case at bar, that court said: "But it is said that the mayor and council had authority to form suitable sewerage districts, and that, having formed the same, their judgment cannot be reviewed in this action. The answer to these objections may be found in the definition of 'sewer.' Webster defines a sewer to be 'a drain or passage to convey water or filth under ground; subterraneous canal, particularly in cities.' "A sewer district, therefore, should be composed of such territory as could be drained directly by the sewer. It would not be necessary to construct the entire sewer at one time, but in such case the cost of construction could not be levied upon property not specially benefited. * * * The power to form a sewer district does not

confer authority to form a taxing district upon which to levy taxes for the construction of sewers upon the property not exceptionally benefited by their construction.' Therefore when the mayor or council formed a sewerage district by arbitrary lines and 'without regard to the topography or drainage of the city, and made such sewer district a taxing district upon which special assessments might be levied for the construction of sewers in any part of the district without regard to the special benefits to property, they exceeded their authority and their action therein is a nullity." While in the practical working out of the provisions of the act it is manifest that no front-foot assessment would be laid against any property whether one or more main sewers are included in a district in excess of the cost of a sewer sufficient for its own drainage, and that the front-foot assessment in the entire district would therefore be unifrom and equal and supported by the direct benefit conferred, yet no such result would be attained when, the excess cost of several main sewers is to be assessed according to valuation against all property in a district containing more than one main sewer. The area drained by one main sewer might greatly exceed that drained by another, and the excess cost of the main sewer be greatly reduced by the greater front-foot assessment. On the other hand, the cost of a main sewer draining a much smaller area might be very greatly increased by topographical conditions and the total excess cost increased by a smaller front-foot assessment. The practical result in such cases would be that property drained by one main sewer would be unduly taxed for the excess cost of another main sewer from which it would receive no direct benefit. Whether such an assessment might be sustained if directly authorized by the Legislature on the theory of a legislative determination of benefits advanced in Rolph v. Fargo, 7 N. D. 640, 42 L. R. A. 646, 76 N. W. 242; Webster v. Fargo, 9, N. D. 208, 82 N. W. 732; Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921; French v. Barber Asphalt Pav. Co., 181 U. S. 341, 21 Sup. Ct. 625; Barber Asphalt Pav. Co. v. French, 158 Mo. 534, 58 S. W. 934; and Wolff v. Denver, 20 Colo. App. 135, 77 Pac. 365, we are not at this time called upon to decide.

[5] It is clear, however, that section 17, art. 6, of the state Constitution, requiring all taxation to be equal and uniform is applicable to special assessments or special taxation within taxation districts. It is so held in effect by this court in Whittaker v. Deadwood, 23 S. D. 538, 122 N. W. 590. We hold that the commissioners of the city of Sioux Falls are not given authority by the act to order the construction of more than one main sewer in a sewer district, and that the proceedings attempting to assess appellant's property for the cost of more than one main sewer are void. Appellant is entitled to the relief demanded. Lee et al. v. Town of Mellette et al., 15 S. D. 586, 90 N. W. 855.

The order appealed from is reversed, and the trial court directed to grant the relief prayed for.