# BARBER ASPHALT PAVING COMPANY, Appellant, v. MUNN et al.

### Division Two, December 24, 1904.

1. **TAXBILLS: Contract to Keep in Repair.** Although the city charter does not expressly permit the cost of keeping a street improvement in repair to be charged against abutting property, a contract for the paving of a street which requires the contractor to keep the pavement in a perfect state of repair for a period of five years after completion is not void.

2. ——: **Front-Foot Rule: Constitutional.** A charter provision apportioning and charging the cost of a street improvement against abutting property in accordance with the front-foot rule is constitutional.

3. ——: ——: **Inequality of Width of Pavement: Street Railway.** The apportionment of the cost of a street pavement according to the front-foot rule is not invalid because the amount of the pavement in front of some property was less than that in front of other abutting property. The fact that the ordinance required a street railway to construct the pavement within and for eighteen inches on each side of its tracks, and there was a street railway in front of defendant's property and not one in other parts of the street paved, does not make invalid an assessment against defendant's property in the proportion that the number of front feet owned by him bears to the whole number of feet fronting on the street improved.

4. ——: **Validity Not Raised By Instruction: Appellate Practice.** If no instruction was asked by either party attacking the validity of the taxbill on the ground that the city engineer did not make and sign the apportionment, that point cannot be considered on appeal.

5. ——: **Objections Within 60 Days: Due Process of Law.** The fact that no objection to the validity of the taxbill sued on was filed with the board of public works within sixty days after the issue of the taxbills and notice published, as the city charter required, etc, does not deprive the property-owner from showing the taxbills to be invalid and illegal when sued thereon. A provision in the charter requiring the property-owner to file such objection within such time or be deprived of the right to question the validity of the taxbill, is in conflict with the Constitution, in that it deprives him of his property without due process of law.

6. ———: Invalidity: Work Not Completed In Time. The ordinance under which a street improvement is made must control and determines the time within which the work is to be performed, and where the ordinance provides that "the work shall be completed in sixty days from the time the contract therefor takes effect," any provision in the contract repugnant to these plain requirements must yield, and if the work is not done within the time specified by the ordinance, taxbills issued to pay for the same are invalid.

7. ———: ———: ———: Ordinance and Contract: Commencement of Work: Engineer's Order: Penalty: Reasonable Time. The ordinance for the paving of a street provided that "the work shall be completed in sixty days from the time a contract therefor binds and takes effect," and the contract, in force after November 12th and making the time of commencing and completing the work essentials thereof, provided the same time within which the work was to be completed, and that "in case the contractor shall fail to complete all the work . . within sixty days, the city engineer shall deduct from the aggregate due on the contract ten dollars a day for each working day after sixty days that the work is not completed," and also contained a provision that "no concrete shall be laid when the temperature at any time during the day or night falls below 35 degrees Fahrenheit," and that "no allowance shall be made for additional time for completing this contract unless the contractor shall be delayed by a written order from the city engineer and then only for the number of days stated in the order." On December 27th, the engineer suspended the work "until the advent of favorable weather in the spring, . . . the work to be completed in a reasonable time thereafter," and the work was not begun until the 10th of April, and was not completed until the 18th of May. Held, first, that the ordinance, and not the contract, must control in determining within what time the work was to be completed, and that requirement was not relieved against by the provision in the contract for a penalty of ten dollars a day to be deducted as liquidated damages in case the work was not completed within the time specified in the ordinance; second, notwithstanding there were not sixty days between the time the work should have been begun and when completed during which the temperature did not fall below 35 degrees Fahrenheit, if the work was not completed within sixty days after the contract went into effect, the taxbills issued in payment therefor were invalid; third, if the contractor voluntarily postponed the commencing of the work until the spring, or beyond the ten days when it was required to be begun, without an order of postponement by the engineer, the taxbills were invalid; fourth, even if the weather provision as to laying the concrete could be held to change the time for completing the

work, the engineer's order did not attempt to change the time for commencing the work; fifth, the engineer's order suspending the work "until the advent of spring" was in disregard of the contract which required the order to state "the number of days;" sixth, the contractor's failure to begin the work until April 10th, was not a compliance with the contract; seventh, the engineer had no authority to grant "a reasonable time" for the commencement of the work after the advent of favorable weather in the spring; eighth, there is no room either in the contract or ordinance for a presumption that the work was to be completed within a reasonable time; and, ninth, so much of the contract as provided for the penalty for failure to complete the work within the time required by the ordinance and contract, was inserted without authority, and hence its assertion did not have the effect to destroy or modify that requirement.

8. ———: ———: ———: **Penalty: Confirming Ordinance.** The fact that subsequently to passing the ordinance fixing the time within which the paving was to be completed, and subsequently to the entering into a contract fixing the same time but including also a provision that if the work was not done within that time ten dollars was to be deducted for every day the work was delayed, there was passed an ordinance confirming that contract "to do the work to be done according to" the prior ordinance, did not relieve against the requirement of the first ordinance that the work was to be completed within the time therein specified, but rather affirmed that requirement. The two ordinances were not repugnant.

Appeal from Jackson Circuit Court.—*Hon. W.B.Teasdale,* Judge.

AFFIRMED.

*Scarritt, Griffith & Jones* for appellant.

(1)   The contract between Kansas City and the Paving Company to pave Tenth street upon being approved and confirmed by ordinance of that city became the legislative act of the city; i. e., its terms had the dignity and sanction of a law, because the city on November 2, 1892, enacted an ordinance expressly confirming and approving that contract. That ordinance recited the date and the parties to the contract and expressly ordained and declared that the contract was

thereby confirmed. Keating v. City of Kansas, 84 Mo. 415; Wheeler v. Poplar Bluff, 149 Mo. 36; 2 Dill. Mun. Corp. (3 Ed.), secs. 949, 951. The reference to the contract and the recital of its confirmation makes the contract as much a part of that confirmation ordinance as though every word and figure of that contract were recited in the ordinance. Pav. Co. v. Ullman, 137 Mo. 571; Becker v. Washington, 94 Mo. 380. (2) Assuming the contract to be a part of the ordinance confirming and ratifying it, then its terms, in respect to the time within which the work was to be completed, being inconsistent with the ordinance, No. 4572, providing for the construction of this pavement, by express requirement or at least by implication, changed the time for such construction. Where two ordinances or laws relative to the same subject-matter are enacted at different times, the law last enacted—the last expression of the legislative will—will be held to be the paramount law. In re Lorkowski, 94 Mo. App. 630; Suth. on Stat. Const., sec. 136. (3) The only ordinance declaration, therefore, in force and effect after the enactment of the confirmation ordinance, relative to the time when the work in question should be completed, was one which specified that if the work was not completed within the sixty days during which the prosecution of the work was not suspended by order of the engineer, and which imposed a penalty of ten dollars a day for each and every day after that period during which the work was not completed, is one in which time is not of the essence of the undertaking. Heman v. Gilliam, 171 Mo. 268. (4) Under a proper construction of the time provision of the paving contract, it required no more than that the work should be completed within a reasonable time, and the period within which the work was suspended, under the written direction of the engineer, is required to be deducted in estimating the period taken to accomplish the work. Barcus v. Plank Road Co., 26 Mo. 102; 1 Dillon, Mun. Corp. (3

Ed.), sec. 483; 15 Am. and Eng. Ency. Law (1 Ed.), 1112. (5) The confirmation ordinance is valid; and the terms of the contract to which that ordinance expressly referred, and which it confirmed and approved, became a part of it and thereby changed the period of sixty days fixed for the completion of the work in the original ordinance No. 4572, to that fixed by the terms of the contract. Carlin v. Cavender, 56 Mo. 186; Strasshein v. Jerman, 56 Mo. 104. (6) The validity of the charter provision in question is at least a debatable question. It is an enactment drafted and adopted in accordance with the requirements of the State Constitution. A presumption, therefore, obtains that it is constitutional and valid. That presumption is so strong that the decisions of this State hold it is to be overcome only by the attacking party sustaining the burden of proving it so. Henderson Bridge Co. v. Henderson, 173 U. S. 615. Under our system of government and under our Federal and State Constitutions as construed, a citizen is not entitled to a judicial trial as a constitutional right upon a demand to enforce a tax. Eames v. Savage, 77 Me. 212; McMillen v. Anderson, 95 U. S. 37; Murray v. Land Co., 18 How. 272; Cooley, Const. Lim. (6 Ed.), 587; McColloch v. Maryland, 4 Wheat. 428; Kelley v. Pittsburg, 104 U. S. 80. The levy and collection of taxes is a legislative function. The methods for so doing must be established by the Legislature. A law could undoubtedly be framed, and in many jurisdictions they are framed, providing for the levy and collection of special assessments without resort to courts at any stage of the proceeding. People v. Turner, 145 N. Y. 451; Seminary v. Tacoma (Wash.), 62 Pac. 444. Because a law is not as wise as it might be, because it does not go as far as it might go, is not a good reason for a court to declare it unconstitutional. State v. Railroad, 21 Nev. 260; Mix v. People, 116 Ill. 265; Allen v. Armstrong, 16 Iowa 508; Wahlgren v. Kansas City, 42 Kan. 243;

Kansas City v. Kimball, 60 Kan. 224; Doran v. Barnes, 54 Kan. 238; Kansas City v. Gray, 62 Kan. 198.

*Joseph S. Rust* for respondents.

(1)   The provision in the charter requiring the owner of the lot to file objections to the taxbill with the board of public works is of no effect.   Richter v. Merrill, 84 Mo. App. 150; Winfrey v. Linger, 89 Mo. App. 161; Barber Asphalt Paving Co. v. Ridge, 169 Mo. 376.   (2)  It is expressly decided by Rose v. Trestrail, 62 Mo. App. 352; McQuiddy v. Brannock, 70 Mo. App. 535; Safe Deposit Co. v. James, 77 Mo. App. 616; Whittemore v. Sills, 76 Mo. App. 248; Neill v. Gates, 152 Mo. 585; Barber Asphalt Co. v. Ridge, 169 Mo. 376; and Schoenberg v. Heyer, 91 Mo. App. 389, that where as in the case at bar the ordinance providing for the work fixes the time for the completion of the work, the taxbills are void, if the work is not completed within that time.   (3)  The ordinance confirming the contract could not change that sixty-day time-limit provided for in original ordinance for the following reasons:   1st, the confirming ordinance did not say one word about extending that time; 2nd, the bidding was done under the first ordinance, No. 4572, and on the theory that the work had to be done in sixty days, and, as is pointed out in foregoing cases, it would be unfair to the other bidders and the property-owner to change that time after the bids were made.   It would not be letting the work under competitive bids, and the ordinance confirming the contract could not possibly cure that, because it was passed after the bids were made.   Heman v. Gilliam, 171 Mo. 267;   3rd, the work for the doing of which this taxbill was issued was done in pursuance of section 2, article 9 of the charter of Kansas City (a public act), which provides:   ''That no such ordinance shall be passed by the common council except upon the recommendation of the board of

public works endorsed thereon.'' Such ''recommendation of the board of public works'' (which is a 'condition precedent and without which the .work cannot be done) was not endorsed on the ordinance which confirmed the contract, and for that reason that confirming ordinance could not take the place of the ordinance providing for the work; as appellant so ingeniously argues. The purpose of the confirming ordinance is not to provide terms on which the bids are to be made and it did not so provide. The bids have then already been made. St. Louis v. Franks, 78 Mo. 43. (4) Even if the $10 per day penalty provided for in the contract would annul the unconditional provision of the original ordinance for completion in 60 days, the evidence shows expressly that no credit was made on account of this nearly five months' delay.

GANTT, P. J.—This is an appeal from the circuit court of Jackson county. The suit is an action by petition in the ordinary form to enforce the collection of 'a special taxbill issued by Kansas City against a city lot owned by defendant, in part payment of the contract price. for paving Tenth street from Cherry to Olive street with an asphalt pavement. The petition contains four counts, each of which is grounded upon one of the four installments of the taxbill. The answer embraces first a general denial and six special defenses as follows:

''1.   That the ordinance and contract providing for the work, required the work to be completed within sixty days after the contract became binding; that while the contract was approved and became binding on the 2nd day of November, 1892, the work was not completed until May, 1903, by reason whereof the taxbill is.void.

''2.   That the terms of the contract required the street to be guaranteed to remain in a state of perfect repair for a period of five years after completion; that

there was no law authorizing the charging of the cost of repairs against abutting property, and that said ordinance, contract and bill are, because of the guaranty and provisions, void.

"3. That the Kansas City charter requirement for apportioning and charging the cost of such work against abutting lands according to their frontage upon the improvements is unconstitutional and void.

"4. That the amount of pavement laid in front of other property upon the street paved was greater than in front of the defendant's property, while the cost of the whole work was levied against abutting lands according to frontage.

"5. That the city engineer did not personally compute and apportion the cost of the work as required by section 6 and article 9 of the charter of Kansas City.

"6. That the contract for the work did not contain a clause providing that eight hours should constitute a day's work for all workmen employed in its execution as provided by the general ordinances of Kansas City."

Plaintiff's reply admitted that the contract for the work in question was approved and became binding on November 2, 1892. It charged that the specifications for the work embraced in the contract between the city and the paving company in evidence, were, by reference, made a part of the ordinance which authorized the work, viz., ordinance No. 4572, entitled, "An Ordinance to pave Tenth Street from Cherry Street to Olive Street;" that the contract reserved to the city engineer the right to suspend the doing of any work thereunder at any time for good cause, and that the action of the city engineer in suspending the doing of the work thereunder, and his decision as to the existence of cause or reason for such suspension, should be conclusive as to the existence of such cause or reason in any controversy or litigation between the parties thereto, or others claiming under them; that for the proper execu-

tion of. the work a temperature above thirty-five de-
grees Fahrenheit was essential; that the contract ex-
pressly provided that no concrete should be made or
laid on any day when the temperature at any time dur-
ing the day or night was below thirty-five degrees Fah-
renheit; that the temperature from the 10th of Novem-
ber, 1892, until April, 1893, was at some time during
the day or night below thirty-five degrees Fahrenheit,
and that the city engineer determined that the tempera-
ture of the weather was such as to render the prosecu-
tion of the work impractical, and notified plaintiff not
to proceed with the same until the spring season of
1893 should open; that the said engineer did in writing
suspend the doing of the work under said contract until
the advent of favorable weather in the spring of 1893,
and notified plaintiff thereof and ordered and directed
plaintiff to complete said work within a reasonable time
after the weather would permit the resumption of the
work under the contract in the spring of 1893, which
was done.

It was further averred in the reply that no one of
defendants, or any of them, or the owners of any real
estate charged with the payment of the taxbills in ques-
tion had within sixty days from the date of the issuance
of said taxbills filed with the board of public works of
said city a written statement of each or all or any of the
objections or facts stated in said answer, or any state-
ment of any objections which they, or any of them, may
have had to the validity of said taxbills, the doing of
the work, the furnishing of the materials charged for,
the sufficiency of the work or materials used, or any
mistake or error in the amount thereof, as required
by section 23 of article 9 of the charter of Kansas
City.

The evidence shows that the work was done under
on ordinance, approved September 21, 1892, and num-
bered 4572, and entitled, ''An ordinance to pave Tenth
street from Cherry street to Olive street.'' The first

section provides that Tenth street from Cherry to Olive street shall be paved the full width thereof exclusive of all sidewalks of legally established widths and the spaces between the rails and tracks of the cable railway and intersecting streets already paved. Section two provides for doing the work on a firm foundation, the base to be hydraulic cement four inches in thickness, and the wearing surface of pure Trinidad asphaltum.

Sections three and four are as follows:

"Section 3. The work shall be completed within sixty days from the time a contract therefor binds and takes effect and shall be paid for in special taxbills against and upon the lands that may be charged with the cost thereof, according to law. Which work the Common Council deems it necessary to have done. And the Common Council finds and declares that the resolution declaring the work and improvement herein mentioned to be necessary, stating the kind of paving material proposed to be used, as provided by section 2, of article 9, of the charter of said city, has been published as therein required, and that the resident owners of said city who own a majority in front feet of all the lands belonging to such residents fronting on said part of the street aforesaid, to be improved, have not filed with the city clerk a remonstrance against the doing of such work, or a petition for the making of such improvement with a different kind of material or in a different manner from that specified in such reso-. lution. And the passage of this ordinance and the doing of said work shall not render Kansas City liable to pay for such work, or any part thereof, otherwise than by the issue of special taxbills.

"Section 4. The total cost of the work herein authorized shall not exceed the sum of $2.50 per square yard, and said work shall be executed with a guarantee to maintain and keep the same in a state of perfect re-

Vol 185 mo—36

pair for a period of five years from and after the completion and acceptance of the same, without further compensation than that provided for in the contract for the first cost of the same and for which said special taxbills are issued.''

The board of public works recommended that the ordinance pass and endorsed their recommendation on the ordinance as required by the charter.

In pursuance of this ordinance a contract was entered into on October 6, 1892, between the Barber Asphalt Company as principal, with R. W. Hocker, W. E. Hall and R. Callaway as sureties, on the one part, and Kansas City as party of the second part.

The contract contained a recital that the plaintiff was the lowest and best bidder for making said improvements under the provisions of ordinance No. 4572, approved September 21, 1892. The stipulation as to time is as follows:

''TIME.—Work to be commenced within ten days from the time the contract binds and takes effect and all the work completed to the satisfaction and acceptance of the city engineer within sixty days after the date of this contract. Working days to include all days excepting only Sundays and legal holidays.

''PENALTY.—In case the contractor shall fail to complete all the work herein contemplated in accordance with the terms of these specifications within sixty days as aforesaid, the city engineer shall deduct from the aggregate amount due according to the conditions of this contract an amount equal to ten dollars per day for each and every working day after sixty days that the work is not completed.

''DETENTION.—No allowance will be made for additional time for completion of this contract unless the contractor shall be delayed or restrained from prosecuting the work or any and every part thereof in pursuance of a written order from the city engineer and then only for the number of days stated in such order.

"TIME.—The work embraced in this contract shall be begun within ten days after this contract binds and takes effect and it shall be prosecuted regularly and uninterruptedly thereafter (unless the engineer shall specially direct otherwise in writing) with such force as to secure its full completion within sixty days from the date of its confirmation; *the time of beginning,* rate of progress, and time of completion being essential conditions of this contract. And if the contractor shall fail to complete the work within the time above specified an amount equal to the sum of ten dollars per day for each and every day thereafter until such completion, shall be deducted as liquidated damages for such breach of this contract from the amount of the final estimate of said work."

The testimony shows without contradiction that the work was not begun until the 10th of April, 1893, and was not completed until May 18, 1893. Other facts will be noted in the course of the opinion.

I. The defense that so much of the contract as required the plaintiff to guarantee the pavement to remain in a perfect state of repair for a period of five years after completion was void because the charter does not permit the charging of abutting property for repairs, has been settled by the decisions of this court adversely to defendant's contention, and we must decline to further consider that question. [Barber Asphalt Co. v. Ullman, 137 Mo. 543; Seaboard Nat. Bank v. Woesten, 147 Mo. 467; Barber Asphalt Co. v. Hezel, 155 Mo. 391; Barber Asphalt Co. v. French, 158 Mo. 534.]

II. The same must be said as to the charter provision of Kansas City for apportioning and charging the cost of such work against abutting lands according to the front-foot rule. That provision was carefully considered and held to be constitutional in Barber Asphalt Co. v. French, 158 Mo. 534, and reaffirmed by the

Supreme Court of the United States in the same case in 181 U. S. 324.

III. The special defense, that the amount of pavement laid in front of other property upon the street paved was greater than in front of the defendant's property, while the cost of the whole work was levied against the abutting lands according to frontage; that a street railway occupied the street from Cherry street to Brooklyn avenue, and that from Brooklyn avenue to Olive there was no street railway; that plaintiff was only required to and did only pave Tenth street from the curb on each side of said street to within 18 inches of said street car track from Cherry to Olive street, and the street car company paved from 18 inches of its track on one side to 18 inches beyond its track on the other side thereof, and that said part of the street was not paved by plaintiff, and that plaintiff paved the whole of said street from Brooklyn avenue to Olive street, and on that part of the street on which defendant's property was situated only paved up to within 18 inches of the car tracks on either side, by reason whereof plaintiff was only required to and did pave only half as much of said street in front of defendant's property as it did on the portions where there were no street car tracks, and yet defendant was charged in proportion to the whole cost of paving said street that defendant's frontage bore to the entire frontage, and by reason of this inequality the taxbill was void, cannot be sustained. It is at once apparent that this is the same argument only in a different form that has often been made against the constitutionality of the front-foot rule, but which has as often been rejected. The inequity here relied on is no greater than that which results from the application of the front-foot rule to lots of unequal depth and less area.

The contract was for the whole improvement and the assessment according to the frontage of the lots abutting on the entire improvement in proportion to

the whole. Moreover, it does not appear that it would have been any less per front foot had the improvement only extended along and in front of those blocks in front of which the railroad tracks were laid, for it may well have been that the cost of securely binding and joining the pavement to that constructed by the railroad company exceeded that where the whole street was paved without such obstructions. The charter required the assessment and apportionment to be made according to the frontage on the improvement. It was clearly within the municipal authority to determine what street improvement and the extent thereof should be made and what property would be benefited thereby and to fix the benefit district and apportion the tax. [Barber Asphalt Co. v. French, 158 Mo. 547; Dunker v. Stiefel, 57 Mo. App. 379; Springfield to use v. Weaver, 137 Mo. 669.]

In our opinion this paragraph of the answer is no defense to the action.

IV. As to the defense predicated on the failure of the city engineer to make and sign the apportionment, no instruction was asked by either party, and of course none was refused; consequently the point is not before us for review, though both parties have briefed the proposition elaborately.

V. We come now to the alleged errors for which a reversal is sought. The circuit court found as a fact that "none of the defendants, nor any owner of the land described in the petition, did, within sixty days after the date of the issue of the taxbill sued on, file with the Board of Public Works of Kansas City a statement of objections which he or they had to the validity of the taxbill sued on, the doing of the work, the furnishing of the materials charged for, the sufficiency of the work or materials therein used, or any mistake or error in the amount thereof."

Because the court so found the plaintiff insists the court erred in admitting any testimony to establish

any of the averments of the answer, and that plaintiff, therefore, was entitled to judgment, notwithstanding the answer.

This proposition was urged on us in Barber Asphalt Co. v. Ridge, 169 Mo. 376, and we then held that the provision of the charter of Kansas City (sec. 23, art. 9) was in conflict with the Constitution and laws of this State which guarantee ''that no person shall be deprived of life, liberty or property without due process of law.''

We have been urged to reconsider our ruling in that case and to hold said provision of the charter a valid one. We have carefully considered the argument and authorities pressed on behalf of the plaintiff, but without repeating what was said in Ridge's case we see no reason for departing from the views then expressed, and conclusions reached in that case. We are still of opinion that it is in conflict with the fundamental principles of our State Constitution and out of harmony with our whole judicial system. [Richter v. Merrill, 84 Mo. App. 150; Winfrey v. Linger, 89 Mo. App. 161.] The condition of the docket and the time at our disposal will not admit of a critical review of the numerous cases cited by the appellant. It must suffice to say that we have examined them, but have not been shaken in our views as expressed in Barber Asphalt Co. v. Ridge, 169 Mo. 376, and the cases approved therein.

VI. We come now to the assignment of error, that the circuit court erred in giving its 7th, 9th and 10th declarations of law. The said declarations are as follows:

''7. The court declares the law to be that under the pleadings and evidence in this case, in determining the sixty days within which the work should be completed, no allowance should be made on account of weather or temperature of the atmosphere, and that the taxbill is void if the work was not completed

within sixty days, even though there may not have been sixty days between the time it could or should have been commenced and when completed, during which the temperature did not fall below 35 degrees Fahrenheit, some time during the day or night.

"9. The court declares the law to be that if the work for which the taxbill in question was issued was not completed within sixty days from when this contract went into effect, then the judgment should be for defendants and that all orders by the city engineer stopping or extending the time for doing the work were of no effect and void.

"10. The court declares the law to be that there is no evidence in this case which is competent for the purpose of showing any extension of time for commencing or completing the work beyond that provided in the ordinance; or which is competent for the purpose of showing any good or legal excuse for not commencing or completing the work within the time provided in the ordinance."

These declarations of law are all predicated on the view that the ordinance under which the taxbill in suit was issued, must control, and as the ordinance expressly provides that "the work shall be completed in sixty days from the time a contract therefor binds and takes effect," and the contract itself provides the same time within which the work must be completed, and further provides that "in case the contractor shall fail to complete all the work herein contemplated in accordance with the terms of these specifications within sixty days, as aforesaid, the city engineer shall deduct from the aggregate due on the contract an amount equal to $10 a day for each and every working day after sixty days that the work is not completed," the time of commencing and completion of the work were of the essence of the contract.

There was also a provision in the specifications that "no concrete shall be laid at all when the tem-

perature at any time during the day or night falls below thirty-five degrees Fahrenheit.''

The plaintiff offered and read in evidence the following endorsement on the contract:

"City Engineer's Office,
"Kansas City, Dec. 27, 1892.

"In accordance with the terms of the within contract, I hereby suspend the doing of the work herein provided until the advent, of favorable weather in the spring of 1893, the work to·be completed in a reasonable time thereafter.

"John Donnelly,
"City Engineer.''

By reference to the statement of facts in Neill v. Gates, 152 Mo. 585, it will be observed that the ordinance and contract construed in that case is in all material respects identical with the ordinance and contract in this case.

In that case, as in this, it was earnestly contended that notwithstanding the ordinance prescribed the time within which the work must be done, inasmuch as the contract entered into by the engineer and con-·tractor provided that if the contract was not completed within the time prescribed therein and by the ordinance, an amount equal to ten dollars a day for each and every day thereafter until completion should be deducted as liquidated damages, this provision must control and not that which was fixed by the ordinance, nor that which made time the essence of the contract. Answering this contention this court held that the ordinance must and did control, and that the failure to complete the work within the time prescribed by the ordinance rendered the taxbills void. A similar conclusion had been reached by the Kansas City Court of Appeals in McQuiddy v. Brannock, 70 Mo. App. 535; Rose v. Trestrail, 62 Mo. App. 352; and New England

Safe Deposit & Trust Co. v. James, 77 Mo. App. 616, and those cases were approved.

But it is urged that a different conclusion was reached by this court in Heman v. Gilliam, 171 Mo. 258, and that Neill v. Gates, and the decisions of the Kansas City Court of Appeals on this point, are not in harmony with this latest decision of this court on that question. In Heman v. Gilliam, supra, there is a clear and admirable review of all the cases above quoted on this point by Judge BRACE, and he points out that in that case the *ordinance* under which the work was done for which the taxbill was issued, "did not require the work to be completed within any specified time. The ordinance is silent on the subject, and says nothing as to when the work shall be commenced or completed." Our learned brother in that case clearly distinguishes that case from Neill v. Gates, Rose v. Trestrail, McQuiddy v. Brannock, Whittemore v. Sills, 76 Mo. App. 248; Safe Deposit Company v. James, Shoenberg v. Heyer, 91 Mo. App. 389, and Barber Asphalt Co. v. Ridge, in all of which, as in this case, an ordinance required the work should be completed in a specified time. And Springfield to use v. Davis, 80 Mo. App. 574, fell within the reasoning of those cases, because while the ordinance providing for the work did not specify the time within which it must be done, the contract did, and there was a general ordinance of the city which provided such work must be done "within the time agreed upon." In Heman v. Gilliam there was no such general ordinance shown. Nowhere in Heman v. Gilliam is there the slightest criticism of Neill v. Gates, or the cases which it followed, and we see no conflict between that case and the decision in Neill v. Gates, and Barber Asphalt Co. v. Ridge, 169 Mo. 376.

We see no reason whatever for departing from the ruling made in the last-mentioned cases. The contract was made with full knowledge of the require-

ments of the ordinance, and the contract itself bound the plaintiff to complete the work within sixty days. The provision for a penalty in case of a failure under the circumstances did not relieve the contractor from his obligation to perform his work within the time prescribed by both the ordinance and his contract, but if there is any conflict the ordinance controls. The circuit court correctly held that if the work was not completed within sixty days from the time the contract went into effect, then its judgment must be for the defendant, even though there may not have been sixty days between the time it could or should have been commenced and when completed, during which the temperature did not fall below 35 degrees Fahrenheit at some time during the night or day.

The declarations of law were necessarily given with reference to the facts before the court. The contractor did not commence the work until April 10, 1893. The contract required him to commence within ten days from the time the contract became binding. The confirmation ordinance was passed November 2, 1892. That ordinance did not change or undertake to change the time limit provided for in the original ordinance, No. 4572. The plaintiff took no step to comply with its contract, and even if the weather provision as to the concrete could be held to change the time of completion, no application was made to the engineer for relief until December 27, 1892, six days before the expiration of the time. Moreover, the engineer made no certificate that the work could not be done on account of stress of weather. He merely attempts to suspend the work until favorable weather in the spring. He at no time and by no act attempted to extend the time *for commencing the work.* The court properly declared that if plaintiff voluntarily determined to postpone or did postpone the doing of the work until the spring of 1893, and at that time no order for stopping

or postponing the work had been made by the city engineer, then the judgment must be for defendants.

When the endorsement was made on the contract the plaintiff was already in default for nearly two months. This was in no sense a compliance or attempted substantial compliance with the contract.

The contract expressly provided that no allowance would be made *for additional time* for the completion of the contract, unless the contractor should be delayed or restrained from prosecuting the work in pursuance of a written order from the city engineer *and then only for the number of days stated* in the order. Obviously this provision did not permit such an utter disregard of the terms of the contract as plaintiff was guilty of in this case for nearly two months. But we go further; we hold the engineer had no authority to dispense with a compliance with this contract, further than for some pressing, or at least, reasonable cause, and if that intervened he was limited to *stating* the *number of days in his order.* His endorsement on the 27th of December, 1892, was no such compliance with the power found in the foregoing provision.

As between the ordinance and the contract the ordinance must govern and any provision in the contract repugnant to the plain requirements of the ordinance must yield to the ordinance. There was no stipulation in the contract exempting plaintiff from a compliance with its terms on account of unfavorable weather. The contract became binding November 2, 1892. Plaintiff knew then that unless it acted promptly and completed the contract within the time limited it would likely encounter cold weather, and yet it entered into the contract and *did not commence it* at all until April 10, 1893. This was not a compliance with the contract on which plaintiff lays so much stress. The sixth paragraph of the contract provides, ''the work shall be commenced within ten days after this contract binds and

takes effect and it shall be prosecuted *regularly* and *uninterruptedly* thereafter (unless the engineer shall specially direct otherwise in writing) with such force as to secure its full completion within sixty days from the date of its confirmation, *the time of beginning, rate of progress* and time of completion being essential conditions of this contract.''

There is no pretense that it was commenced within ten days after November 2, 1892, nor that it was prosecuted *regularly* and *uninterruptedly thereafter,* until it was stopped by an order in writing because no order of any kind was made until December 27, 1892, and the order then made did not comply with the other provision of the contract, requiring the number of *days* to be specified by the engineer in his order. Moreover, the engineer had no authority to grant a *reasonable time* after favorable weather commenced in the spring of 1893. The ordinance expressly negatives any such power in that official.

VII. But it is urged by plaintiff that the confirming ordinance approved the contract and therefore there was no specific time limit, because the contract contained the qualification that ''if the contractor shall fail to complete the work within the time above specified an amount equal to the sum of ten dollars per day for each and every day thereafter until such completion shall be deducted as liquidated damages for such breach of this contract from the amount of the final estimate;'' that this provision in the contract rendered the time indefinite; that this confirming ordinance being later in time than ordinance No. 4572 *pro tanto* repealed the specific time limit fixed by said prior ordinance and became the ordinance in fact under which the work was done. We think this reasoning is much more plausible than sound, when we consider the charter provisions on this subject and the whole scope of legislation by Kansas City in regard to

street improvements.   Ordinance No. 4572, by virtue of the authority of which the work was done, recites on its face that it was enacted in pursuance of section 2 of article 9 of the charter of said city.   By that article the city is only empowered to pave its streets pursuant to and "as may be provided by ordinance."   As a preliminary step to the passage of such an ordinance, the Common Council is required to pass a resolution that such work or improvement is necessary, stating the kind of material proposed to be used, and such resolution shall be published for ten days in the newspaper doing the city printing, and unless the resident owners of the city who own a majority in front feet of all the lands belonging to such residents and fronting on the street to be improved shall within thirty days from the first day of publication file a remonstrance against the proposed improvement, then the Common Council shall have power to cause the proposed improvement to be made and issue taxbills therefor, *provided,* however, that no such resolution or ordinance shall be passed by the Common Council except upon recommendation of the Board of Public Works indorsed thereon.

By section 811 of the Revised Ordinances of said city, it is provided that when any ordinance shall provide for the doing of any work mentioned in the second section of article 9 of the city charter, the city engineer is required to provide the necessary plans and specifications, "which shall, in cases where a contract must be let to the lowest and best bidder, *prescribe a time within which the work shall be finished.*" A notice of the letting of the contract for ten successive days is required.

Section 818 of the Revised Ordinances requires the engineer to notify the successful bidder to enter into a written contract with the city.   "Every such contract shall be submitted to the city counselor, or, in his absence or disability, to the first or second assist-

ant city counselor, for approval of *the form* thereof (which approval shall be endorsed thereon), after which it shall be submitted to the Common Council for its approval, which approval shall be by ordinance,'' and ''the approval shall be endorsed thereon by the city clerk and the contract bind and take effect from the date of such approval.''

Now, applying these charter provisions and ordinances to the contract in this case, which ordinance controls the rights of these parties? The one which had been passed in strict conformity to the charter of the city after due notice to the property-owners who were to be charged with the payment for the improvement and which specifically fixed, for the information of all parties, especially contractors who were to bid on such work, sixty days as the time within which the work must be completed, and in pursuance of which plaintiff bid for the work, *or* the ordinance which merely approved the contract? Unquestionably the ordinance which was passed in pursuance of the charter provisions adopted for the specific purpose of protecting alike the property-owner and competitive bidders. It was under this ordinance the bids were made, and without pursuing the essential prerequisites prescribed by the charter, no valid charge against the abutting property could be enforced.

The general ordinance of the city provided for competitive bidders for the protection of the taxpayer. As said by Judge Smith, in Rose v. Trestrail, 62 Mo. App. 355, ''the ability of a city to create a lien on the property of the abutting owner for street improvements made in pursuance of the provisions of its ordinances authorizing the same, is not founded on any pre-existing right, but rests exclusively on a substantial adherence to the method prescribed by such ordinances.'' [Kiley v. Oppenheimer, 55 Mo. 374; Leach v. Cargill, 60 Mo. 316.] To this we may add, a substantial compliance with the charter of the city itself,

for that is its power of attorney to exercise the high prerogative of taxation. Obviously we think the confirming ordinance is intended as a security that the provisions of the ordinance under which the work is authorized to be done have been complied with, and for the purpose of exacting of the bidder a contract in due and legal form. Clearly it is not the intent and purpose of such an ordinance to repeal any of the material and controlling provisions of the main or enacting ordinance providing for the work. Applying now the terms of the confirming ordinance, what is its purport and substance? It consists of one section as follows: "That the written contract dated October 6, 1892, and entered into by the Barber Asphalt Paving Company as principal and as security with Kansas City to do the work *to be done according* to ordinance No. 4572 entitled, 'An ordinance to pave Tenth street from Cherry street to Olive street,'. approved September 21, 1892, be and the same is hereby confirmed, said principal being the lowest and best bidder for doing said work."

There is not a word in this confirming ordinance that purports to *expressly* repeal or amend or vary ordinance No. 4572, approved September 21, 1892. On the contrary it approves the contract "to do the work *according* to ordinance No. 4572," thus recognizing the controlling effect of said ordinance. When we look into the contract thereby approved it also requires the work to be done in 60 days and makes the time of commencing, the rate of progress of the work and the completion thereof, essential conditions of this contract. To say that the mere addition of the penalty clause for failure to complete the work within 60 days was intended to, or did repeal and nullify all these clear and positive requirements as to the time within which this work was to be done would be contrary to all recognized rules of construction and interpretation of written documents and statutes or ordinances. There

is not only no repeal of ordinance No. 4572 in this confirming ordinance, but no implied repeal thereof. There is no repugnancy whatever between the two.

So much of the contract as provided for the penalty for failure to complete in the time required by the ordinance and contract must be held to have been inserted without authority, but its insertion did not have the effect of destroying the plain, unequivocal command of the ordinance under which the work was authorized and the bids made, nor to prevent the stipulations as to time from having their full force and effect.

There is no room in ordinance No. 4572, nor in plaintiff's contract, for the presumption that the work was to be done in a reasonable time, but if there was, the inexcusable delay, the disregard of the plain provisions of the ordinance and the contract all show there was no reasonable compliance with the requirement of the ordinance or the contract.

The failure to comply with the contract renders the taxbills void and the judgment of the circuit court is affirmed.

*Fox, J.,* concurs; *Burgess, J.,* not sitting.