# GOTTLIEB EYERMANN et al., Appellants, v. CITY OF ST. LOUIS.

### Division One, June 30, 1915.

1. STREET IMPROVEMENT: Judicial Knowledge: Payment by Special Taxation. Courts cannot pretend to be ignorant of matters of public knowledge founded alike in common sense and common experience. They know that the fact that the contractor for street construction must receive payment in special tax bills to be collected by him at his own expense and risk, is an important element in the cost of such public improvements; and they cannot assume that the Legislature would permit this burden upon the urban-property owner to be extended to the cash expenditure by the city for the maintenance of its streets, except upon the clear expression of its intention to do so.

2. ————: Contract for Independent Repairs: Invalid. The city of St. Louis has no power under its charter to enter into a contract for the construction of a street pavement whereby it undertakes to bind itself to employ the same contractor to make all repairs which may, during a term of years succeeding its completion, become necessary from causes having no connection with the sufficiency, character or durability of the completed work, and to pay therefor the same price per unit which, by the terms of the contract, was to be paid in special tax bills for the construction.

3. ————: ————: Laying Sewer: Damages for Breach. The charter of the city of St. Louis authorizes the inclusion in an ordinance for the construction of a street pavement "a provision that the work and material must be guaranteed and kept in repair by the contractor doing the work for a term of years to be specified in the ordinance;" and in pursuance thereto, and in order that a sound and durable pavement may be obtained, the city may take from the contractor a guaranty of the perfection of the work and the materials, and to keep the agreed work in repair, free of cost, for a reasonable term of years; but it has no power to extend its charter authority to make contracts for future maintenance, to include independent work, and such a contract would be void. For instance, a contract for the construction of a street pavement of paving blocks, which obligates the contractor to guarantee the original work for ten years, and to make repairs "made necessary by the construction of sewers" or "from any other disturbance of the pave-

265Mo.34

ment," the cost to be paid by the city, did not prohibit the city from taking up the paving for the purpose of putting a sewer in the street and in refusing to permit the contractor of the original paving to repair the pavement, but in these respects is void, and the city is not liable for damages for refusing to permit said contractor to make the repairs.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*Schnurmacher & Rassieur* and *Blodgett & Rector* for appellants.

(1) The reconstruction work done by the defendant is within the contemplation of the ordinances and contracts in evidence. (2) The repair clause of the contract is valid. Lamar W. & E. L. Co. v. Lamar, 128 Mo. 223; Walla Walla Case, 172 U. S. 1; Saleno v. Neosho, 127 Mo. 627; Ullman v. Paving Co., 137 Mo. 543; Bank v. Woesten, 147 Mo. 467; Paving Co. v. Hezel, 155 Mo. 391; Paving Co. v. French, 158 Mo. 534; Asphalt Co. v. Munn, 185 Mo. 552; Allen v. Labsap, 188 Mo. 692; Bank v. Woesten, 176 Mo. 49.

*William E. Baird* and *Truman P. Young* for respondent.

(1) The city of St. Louis, under its former charter, had no power to insert in a contract for the paving of a street that the contractor should have the right for ten years to make all repairs, at the expense of the city, which might become necessary by reason of the cutting of a street for the purpose of laying conduits, wires, etc. The city was given the right by sections 14 and 15 of article 6 to insert in such a contract a clause of guaranty. Such a clause, however, should cover wear and tear only and should provide for maintenance by the contractor at his own expense. That

such are the limits of a guaranty clause is shown by the following cases: Verdin v. St. Louis, 131 Mo. 26; Ullman v. Paving Co., 137 Mo. 543; Bank v. Woesten, 147 Mo. 477, 176 Mo. 59; Paving Co. v. Hezel, 155 Mo. 391; Paving Co. v. French, 158 Mo. 556; Paving Co. v. Munn, 185 Mo. 563; Allen v. Labsap, 188 Mo. 703; Quarry & Const. Co. v. Frost, 90 Mo. App. 677; Asphalt Co. v. St. Louis, 188 Mo. 576; Const. Co. v. Coal Co., 205 Mo. 75. (2) The guaranty clause of the contracts offered in evidence does not apply to work done by the city itself upon the street in question, but applies only to cuts made in the street by private parties acting under permits. This is obvious from an inspection of the contract. The words of a proviso will prevail over any previous clause in the contract. As between inconsistent provisions in a contract, the one appearing last will prevail, and specific provisions will prevail over general provisions. McGrew v. Railroad, 230 Mo. 524. (3) If the contract is to be construed as giving the contractor the right to make repairs where the pavement has been disturbed by the city, that right would exist only where the street was disturbed for the purpose of the original construction of a sewer. It would not apply to a disturbance of the street for the purpose of repairing a sewer. This is obvious from an examination of the language of the contract. (4) If the contractor had the right under the contracts in evidence to repair the street, he would have been required to do so with new material, and not with old material already upon the street. The old material belonged to the city. It is immaterial that it was paid for by special taxation. Special assessments are levied under the taxing power of the State. Meier v. St. Louis, 180 Mo. 408; Garrett v. St. Louis, 25 Mo. 505.

BROWN, C.—We adopt substantially the statement of appellants as follows:

This is an action for damages for breach of contract.

The averments of the petition, essential to an understanding of the case, are that plaintiffs composed a partnership engaged in business as contractors; that in 1905 plaintiffs entered into two contracts with defendant for the reconstruction with paving blocks of certain portions of Branch street between the wharf and Ninth street, and that plaintiffs did the work as required under these contracts. Under these contracts plaintiffs not only guaranteed their original work for a period of ten years from its completion, but in addition thereto were required, on demand of the city, and they had the right, with certain exceptions only, to do the repair work becoming necessary in the event the paving as laid by them should become disturbed during the period of the contract.

The pertinent portion of the contracts contains a guaranty to maintain the street in good order, for the given term, guaranteeing against imperfection in the work or material. If there should be any deteriorations during or at the end of the term, the contractor shall, at the direction of the street commissioner, repair or wholly reconstruct the street. The contract then provides:

"And it is further agreed that whenever any repairs of the street are made necessary from the construction of sewers, the laying of pipes or telegraph wires, or from any other disturbance of the pavement by parties acting under permits issued by the city, the contractor shall, upon notification of the street commissioner, in all cases, except where the party causing the disturbance is required to restore the street, at once make all necessary repairs in conformity with the specifications under which the pavement was constructed. The cost of all such repairs when done by the contractor, exclusive of trenching and back filling, which shall be done by the parties which hold the permits, and

in the same manner as now required by existing ordinances, shall be paid for at the full contract price for a superficial square of new pavement, as fixed in the contract let under provisions of Ordinance Number . . ., and the measurement thereof, together with the amount due the contractor therefor, shall be certified by the street commissioner and shall be paid out of the fund 'Street Repairs—Reconstructed Streets,' and the amount shall be certified by the street commissioner to the auditor, who shall reimburse by transfer the aforesaid fund from the funds of the proper department, if the repairs were made necessary by the construction of any public improvement; and out of the funds to be deposited by persons taking permits for opening the street and before such permits are granted, if the repairs were made necessary by work done thereunder. And it is agreed that the contractor shall have the right to make all repairs which become necessary by the construction of any public improvement or work done by private parties under permits issued and granted by the city upon the basis of compensation aforesaid; provided, however, that it is furthermore covenanted and agreed that this contract shall not be affected, impaired or avoided, and that no claim for compensation or damage shall be presented by or allowed to the contractor for or on account of a disturbance or the tearing up of the street by the city of St. Louis or by any contractor employed by it, or by the grantee of any franchise now or hereafter given or granted by the city of St. Louis for laying conduits, street railway tracks, gas pipes or wires of any character, upon, in or under said street.''

The work was to be paid for by the issue of special tax bills as provided by the charter.

The petition further alleges that in 1908 defendant took up the paving in Branch street for the purpose of putting a sewer in said street and for the doing of other public improvements therein, and that defendant

refused and failed to permit plaintiffs to repair the
street, which they were able and willing and offered
to do, but that defendant, through other parties, or
through its own servants and employees undertook to
do said work and deprived plaintiffs of their right to
do so. The petition further avers that if plaintiffs had
been permitted to do said work aforesaid at the con-
tract prices they would have earned $4392.10, for which
they prayed judgment.

The defendant's answer set up the claim that the
work done by it was not contemplated by the contracts
referred to, but was made necessary by a cave-in of the
Rocky Branch sewer, located under Branch street.

A further contention of the defendant was that the
clause of the contracts sued upon is invalid and of no
effect and contrary to the charter of the city of St.
Louis, in violation of article 6, sections 14, 15, 25, and
27 of the charter.

Evidence was introduced tending to prove the al-
legations of plaintiff's petition, the portions of which,
material here, are that the repairs in question were
rendered necessary by a provision of the city for the
enlargement of the sewer under Branch street, and be-
cause at certain points the old sewer had caved in, ne-
cessitating a reconstruction of that part of the sewer.

Upon submission, the court found in favor of de-
fendant, on the theory, as shown by his memorandum
of findings, that the relaying of the pavement was not
contemplated by the terms of the contract covering
"repairs made necessary from the construction of sew-
ers."

Other facts will be referred to as necessary.

The first and most important question in this rec-
ord is whether the city of St. Louis might, under its
charter, make the covenant sued on in its contract for
the construction of a pavement, whereby it undertakes

to bind itself to employ the same con-

**Pavement: Contract for Subsequent Repairs.** tractor to make all repairs upon it which may, during ten years succeeding its completion, become necessary from causes having no connection with the sufficiency, character or durability of the completed work, and to pay therefor the same price per unit which, by the terms of the contract, was to be paid in special tax bills for the construction.

We cannot pretend to be judicially ignorant of matters of public knowledge founded alike in common sense and common experience. We know that the fact that the contractor for street construction must receive payment in special tax bills to be collected by him at his own expense and risk, is an important element in the cost of such work. Methods for the avoidance of this burden upon the urban-property owner have been the subject of much public discussion in the field of municipal reform, and we cannot assume that the Legislature would permit this burden to be extended to the cash expenditure of the city for the maintenance of its streets, except upon the clear expression of its intention to do so. The question is, does the charter then in force give the city that power?

All the charter provisions to which we shall have occasion to refer are included in article 6 of that instrument. Section 14 provides for the recommendation of the Board of Public Improvements, and the preparation and passage of all ordinances for the construction and reconstruction of streets, and expressly authorizes the inclusion in such ordinances of a provision that the *work and material* must be guaranteed and kept in repair by the contractor for a term of years to be specified therein. Section 18 provides that the cost of all such work as is included in the reconstruction of Branch street under this contract shall be paid by special tax bills charged upon the property subject to assessment therefor, to be collected by the

contractor, and exempts the city from any liability whatever for or on account of any such work; and also provides that the *repairs* of streets shall be paid for out of the general revenue of the city.

There was one thing common to both construction and repairs. Section 27 provided as follows:

"The Assembly shall have no power directly to contract for any public work or improvement, *or repairs thereof,* contemplated by this charter, *nor to fix the price or rate therefor;* but in all cases, except in case of emergency work or necessary repairs requiring prompt attention, the Board of Public Improvements shall prepare and submit to the Assembly an ordinance, with an estimate of the cost endorsed thereon by the president of the board, authorizing the doing of any proposed work, and under the direction of the ordinance authorizing the same, shall advertise for bids in the papers doing the city printing, three times, the last publication to be at least ten days before the day appointed for the opening of the bids, stating the general nature of the work to be done and the time and place when the bids will be received, and shall let out said work by contract to the lowest responsible bidder. *Any other mode of letting out or contracting for work shall be held as illegal and void.*"

Had the covenant sued on been a separate contract between the city and the contractor by which the latter undertook, for the term of ten years, to do all work that might, from any cause, become necessary by way of repairs to this same pavement, its validity would not and could not be asserted, for it would fix the rate to be paid without any estimate of the Board of Public Improvements, or the preparation, submission or passage of any ordinance therefor or notice stating the general nature of the work to be done to afford a basis for a bidding. The prohibitive features of this section are clear and peremptory. In requiring such work to

be let to the lowest bidder under an ordinance describing and authorizing it and a notice stating its general nature, and in forbidding the city to do it otherwise, it leaves no room for doubt. The exception of emergency work requiring prompt attention only emphasizes its force.

We do not understand the proposition just stated to be questioned, but the appellant points to the provision of the charter authorizing the guaranty of work and material in contracts for the construction and reconstruction of streets for authority to make this contract with reference to independent repairs. That provision is contained in section 14, and is as follows: "In all cases the board may include in such ordinance a provision that the work and material must be guaranteed and kept in repair by the contractor doing the work for a term of years to be specified in such ordinance." It is upon this alone that the right of the city to contract for miscellaneous repairs, irrespective of the origin of their necessity, or of their extent or importance, so that they be required within any future period which the Municipal Assembly may fix by its ordinance, to be paid for in cash at a price to be fixed upon the basis of payment in special tax bills, must stand, if it stands at all. In plainer terms, the Assembly may, when a street is constructed, close it against all the provisions of the charter intended to secure an honest letting to the lowest bidder under contemporary conditions of work which may become necessary in its maintenance, and make such work the private perquisite of a single contractor at a price fixed to meet conditions that have ceased to exist. The charter authorizes no such absurdity. It authorizes the making of a contract "that the *work and material* must be guaranteed and kept in repair by the contractor doing the work." There is no uncertainty about the terms of this authority. It is confined entirely to work done and material used in making good the legitimate guar-

anty of the construction contract. It places no burden upon the city, while it completely protects it against inferior and defective work and material used in violation of the terms of the contract, and the same protection is extended to the property owner who pays the bill and must pay for the replacement of the work when it is gone. As we said in Bank v. Woesten, 147 Mo. 467, 478, "the obligation required of the contractor to maintain the completed work was intended to secure an improvement that would endure for ten years without restriction." The city in making the contract acts, to the extent of its charter power, as the agent of the property owner as well as of the general public in securing an enforcible contract for the production of a work that will fulfill all its provisions and justify the confidence of the parties in the durability and value of the improvements.

In adjudicating the provisions of this and similar laws this court has arrived at the just and reasonable construction we now indicate. In Verdin v. St. Louis, 131 Mo. 26, the plaintiff sued in equity to enjoin the issue by the city of a tax bill in favor of the Barber Asphalt Paving Company for work done under contract for the reconstruction of Jefferson avenue with asphalt pavement, including curbing and guttering. It involved the same charter provision which we have before us in this case. The contract provided as a part of the compensation to be paid to the contractor, $1962 for maintenance of the pavement during the term of nine years. Many objections were made to the propriety and validity of the tax bill, among which was the assertion that this charge and the provision of the contract under which it was made rendered it void. Upon this question the court said: "By letting to the defendant, the Barber Asphalt Paving Company, the contract for reconstruction, and at the same time, and as part of the same contract, the contract for the maintenance of Jefferson avenue for the period of nine

years at the price of $1962, the contractor was enabled
to obtain from the property holders, in advance, pay-
ment in whole or in part for the maintenance which,
under the charter, is required to be paid by the city;
and if, after the work of reconstruction is completed,
the property holders refuse to pay at once, a special
tax bill is immediately issued, which is a lien upon the
property for the cost of the work of maintenance, which
has not been done and which the contractor may never
do." It also held in the same case that the fact the
material specified in the contract was Trinidad Lake
asphalt, of which the contractor, which was the only
bidder, possessed a monopoly through certain conces-
sions of the exclusive right to take it from the deposit
indicated by that name, made the letting colorable and
unlawful and that the contract was void on that ground.
This contention was also sustained by the concurrence
of the majority of the members of the court.

A similar question arose soon afterward in. As-
phalt Paving Company v. Ullman, 137 Mo. 543. The
suit was upon a special tax bill founded upon a con-
tract for paving in the city of St. Joseph, in which the
paving was guaranteed for five years, and the con-
tractor agreed to keep the same in repair during that
period, at the end of which it was to be turned over to
the city in good order and, condition. It also agreed
to keep the pavement in repair for an additional term
of five years at a price per square yard of ten cents,
to be paid out of the general repair fund of the city.
These payments were to be made semi-annually dur-
ing that time, the first to become due five years and
six months after the completion of the pavement, sub-
ject to the retention of ten per cent of each semi-annual
payment, to be paid upon the completion and accept-
ance of the maintenance. In holding that this tax bill
was not invalidated by this provision the Court in
Banc, after having distinguished the case from the Ver-
din case, supra, which it did not overrule, said through

BARCLAY, J. (l. c. 566): "The 'guarantee' of the pavement for five years, as laid by the plaintiff, involves no extra charge against the adjoining property, further than would be justly payable for a lasting pavement. The term for keeping the agreed work in repair, free of cost, is not longer than the reasonable period such a work should last, if properly done at the outset. It certainly is proper for the city to require of the contractor for such improvements a sound and durable piece of finished work. The agreement to maintain the work free of cost for five years is (so far as this record shows) nothing more than a guaranty that the work shall be of that character."

After proceeding further to demonstrate that there was nothing in that contract or elsewhere that put any part of the cost of repairing the finished street upon the taxable property, and that the contract did not mean to provide "that the paving company shall keep the entire street in repair for the period of five years," but only meant to provide that it should "simply maintain, in good order, for that time, the street as plaintiff agreed it should be made," the majority opinion proceeded (l. c. 569) in a cautionary way as follows:

"The stipulations in regard to the original construction (and maintenance free of charge for the first term of five years) are readily severable from the agreements in regard to maintenance for the second term of five years. [Water Co. v. Neosho, 136 Mo. 498.] The former stipulations may be valid and enforceable by the contractor, even if the latter are not, for want of proper preliminary municipal action to support them. As to the latter we give no opinion. The validity of those agreements we regard as irrelevant to the issues of this appeal. As the case at bar now stands, the latter agreements form no barrier to the collection of the special taxes in suit, imposed for the first cost of the asphaltum street. [Neenan v. Smith, 60 Mo. 292.] Those agreements are a matter

between the city and the contractor, and are not so connected with the stipulations for the work represented by the special tax bills as to impair the validity of the latter. Nothing properly before the court at present discloses that any of the agreements for maintenance of the improved street had a tendency to increase in anywise the special taxes levied on the abutting real property for the original work.''

Bank v. Woesten, 147 Mo. 467, was a suit to enforce the payment of a special tax bill for reconstructing Grand Avenue pavement in the city of St. Louis, with asphalt. The bid, in accordance with the general ordinance in force at the time, included a separate sum for maintenance for nine years, to be paid semi-annually out of the city treasury. The maintenance clause in the contract was as follows:

''The said, The Barber Asphalt Paving Company, party of the first part, expressly guarantees to maintain at grade and surface in good order the aforesaid work of reconstruction for the full period of nine years, commencing one year after the said work of reconstruction is completed and accepted, and binds himself, his heirs and assigns to make all repairs which may from any imperfection in said work or materials become necessary within that time; and the party of the first part shall, whenever notified by the street commissioner that repairs are required, at once make such repairs at his own expense.''

In holding the tax bill for the cost of reconstruction valid the court said:

''Municipal officers who in contracting for such public work, should neglect to take from a contractor some kind of guaranty of the perfection of the work and materials, would be derelict in their duty and unfitted for the trust with which they had been invested. The kind of guaranty should be left to their discretion and business sense. We think no wiser or more adequate provision for securing perfection in the com-

pleted work could be devised than that of requiring the contractor to maintain it for a reasonable time, at such cost as would compensate for the repairs necessary to preserve good work and good material from becoming imperfect from natural and unavoidable causes.''

This seems to have been practically the last word of this court upon the question, and marks the boundary, on lines most liberal to the authority of the city, of its charter power to make contracts for the future maintenance of its streets for the purpose of securing good work and the use of good material in their construction. It has been followed in Barber Asphalt Paving Company v. Hezel, 155 Mo. 391; Barber A. P. Co. v. French, 158 Mo. 534; Barber A. P. Co. v. Munn, 185 Mo. 552; Bank v. Woesten, 176 Mo. 49; Allen v. Labsap, 188 Mo. 692; and we find no case in which these lines have been so extended as to include independent work.

This is the first case that has come to this court, in which an attempt has been made to hold the city to the performance of a contract of this character. In the cases cited it has been urged that these charter provisions should receive an interpretation favoring the exercise by the municipal legislatures of the broadest powers in the performance of its duties with respect to the construction and maintenance of its streets, and extreme restiveness has sometimes been indicated under the limitations which the people have seen fit to impose through legislative enactment or constitutional charter; but the defendant city is now here strenuously asking the protection of its charter against its own attempted action, with a case which strongly illustrates the wisdom of these limitations. We have no choice but to extend it, and must hold the contract is void with respect to the provision invoked in this suit, as being against the plain provisions of the charter. This makes it unnecessary to examine any other question

raised by the appellant, all of which are subordinate to the one we have already decided.

The judgment of the circuit court is affirmed. *Railey, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.