CATHERINE A. BROWN et al. v. THOMAS PHILIPS et al., Constituting Board of Public Works of Kansas City, Appellants.

Division One, October 5, 1923.

1. **IMPROVEMENT OF STREET: Power of Board of Public Works.** Whether it is necessary or expedient to make the improvements of a public street proposed by the Board of Public Works of Kansas City, or whether the expense of making the improvement should be assessed upon abutting property, are purely legislative questions. The board is merely an administrative body; it has no legislative power; it cannot determine whether the street is a business street, or whether from the standpoint of utility or economy it is necessary to re-pave it; it can only recommend, and the Common Council is in no way bound by its recommendations.

2. ————: **Injunction: Premature Suit.** A suit brought by abutting property owners against the Board of Public Works of Kansas City to enjoin the board from negotiating a contract to re-surface a street and from submitting its recommendations to the Common Council, is premature, and should be dismissed, and a judgment enjoining the board from transmitting its recommendations to the council must be reversed.

3. ———— ————: ————: **After Action by Council.** If recommendations by the Board of Public Works of Kansas City for the improvement of a public street have been transmitted to the Common Council, and the Common Council has acted thereon, the court may review its action to the extent of determining whether such action had its inception in fraud or whether it manifests an abuse of power. But where the Common Council has not acted on, such recommendations, the courts cannot anticipate that when it does act it will act wrongfully. If the recommendation be to re-pave an existing street, and such repair is unnecessary, oppressive and confiscatory of the abutting property, the court cannot assume in advance that the Common Council will enact an ordinance re-

quiring such improvement to be made, but must assume, until it has acted, that it will investigate and act honestly; and an injunction to prevent the Board of Public Works from submitting its recommendations to the Common Council, based on the fears and apprehension of abutting property owners, that the Common Council will, when such recommendations are submitted, approve them, will not lie.

Appeal from Jackson Circuit Court.—*Hon. Charles R. Pence,* Judge.

REVERSED AND REMANDED *(with directions).*

*John B. Pew,* City Counselor; and *J. C. Petherbridge,* Assistant City Counselor, for appellants:

(1) Kansas City, under its charter (1908), as amended, July 19, 1910, has full power, by action of the Common Council, upon the recommendation of its Board of Public Works, to pave, re-pave and otherwise improve its streets, and issue special tax bills against the abutting property to pay for the same in the manner proposed in this case. Clause 11, sec. 1, art. 3, Kansas City Charter 1908; Secs. 1, 3, art. 8, Kansas City Charter, as amended July 19, 1910; Skinker v. Heman, 148 Mo. 349; Farrar v. St. Louis, 80 Mo. 379; Barber Asphalt Pav. Co. v. French, 158 Mo. 547. (2) The action of the Board of Public Works, in determining to re-pave the street in the manner proposed, is final and conclusive, and is not subject to review by the courts in the absence of fraud or gross abuse of authority. Field v. Barber Asphalt Co., 194 U. S. 624; Barber Asphalt Co. v. French, 158 Mo. 534, 181 U. S. 324; Prior v. Const. Co., 170 Mo. 451; Heman v. Schulte, 166 Mo. 415; Moberly v. Hogan, 131 Mo. 23; St. Louis v. Rankin, 96 Mo. 505; Heman v. Allen, 156 Mo. 543. The suit was prematurely brought because the action of the Board of Public Works had not been confirmed by the Common Council, and the motion to dismiss for that reason should have been sustained.

*Gossett, Ellis, Dietrich & Tyler* for respondents.

(1)   The petition states facts sufficient to constitute a cause of action.   The acts of a city in respect to making special improvements must be reasonable and, if not reasonable, the courts may enjoin the city's acts on the ground that same are unreasonable and oppressive.   Corrigan v. Gage, 68 Mo. 541; St. Louis v. Theatre Co., 202 Mo. 699; City of Lancaster v. Reed, 207 S. W. 868; City of Windsor v. Bast, 199 S. W. 722; Whitsett v. Carthage, 270 Mo. 285.   (2)   This suit was not prematurely brought. Calvert v. Bates, 44 Mo. App. 626; Maret v. Hough, 185 S. W. 544; Paving Co. v. Fleming, 251 Mo. 223; 22 Cyc. 882. (3) The action of the Board of Public Works in declaring 39th Street a business street was manifestly unfair and unreasonable and made with the evident intention of putting through the proposed asphalt re-pavement against the wishes of the property owners and unnecessary and oppressive and therefore subject to review by the court.   Sec. 3, art. 8, pp. 311, 312, Kansas City Charter 1908; St. Louis v. Theatre Co., 202 Mo. 699. (4)   The action of appellants in proceeding with the asphalt re-pavement at a cost of approximately seven dollars per front foot when the concrete pavement already upon said street was substantial and could be readily repaired at a cost of approximately one dollar per front foot or less, was plainly unfair, unreasonable and oppressive and subject to review by the court.   Stoltman v. City of Clayton, 205 Mo. App. 583; Union Cemetery Assn. v. Kansas City, 252 Mo. 499; Chicago v. Brown, 205 Ill. 568.

RAGLAND, J.—This suit was brought by certain abutting property owners to enjoin the Board of Public Works of Kansas City from negotiating a contract to resurface 39th Street, from the Paseo east to Prospect Avenue, and submitting the same to the Common Council for its confirmation and approval.

In 1912 the street in question was substantially paved with concrete six inches thick, at a cost to the abutting property owners of several dollars a front foot. It was kept up under a maintenance agreement with the contractor for a period of five years, until 1917. The expense of this to the contractor was $500. Two years later the pavement had gotten into such disrepair that it was then thought advisable to have the street re-surfaced. But the property owners vigorously protested on account of the high cost of labor and material prevailing at that time. The Board of Public Works thereupon let a contract for repairing the street. This was done by filling the holes and depressions with asphalt, the cost of which was $1000. In a little more than a year thereafter the pavement was again in a deplorable condition. The concrete had continued to disintegrate, crack and crumble, and in many places it was worn through to the earth. In November, 1920, the Board of Public Works passed a resolution providing for the re-paving of the street by using the concrete as a base and covering it with asphalt. A remonstrance was filed by the owners of the majority of the front feet of the lands fronting on the street, which effectually stayed the proceeding for the time being.

In this connection the procedure prescribed by the charter for effecting street improvements should be noted. All proceedings therefor must be initiated by the Board of Public Works. The first step is the passage of a resolution by the board, stating the nature of the improvement and the methods of making assessments to pay therefor. After the adoption of the resolution a day is set for a hearing with respect to the improvement and notice thereof duly published. If resident owners owning a majority of front feet of the land fronting on the proposed improvement file a remonstrance, the proceeding is stayed for at least six months. If the proceeding is not suspended by remonstrance, or determined against for other reasons, the board proceeds to adopt

plans and specifications for the proposed improvement, advertises for bids, and lets the contract to the lowest and best bidder—all subject to approval and confirmation by the Common Council, through an ordinance to be duly enacted. There is a further provision, however, which under the condition therein described eliminates the veto power of the property owners effected through a filing of a remonstrance. It is as follows:

"In case the proposed improvement consists of . . . re-paving, . . . then, in that event, upon the unanimous recommendation of the Board of Public Works, if each house of the Common Council shall, by ordinance, find and declare by a vote of two-thirds of the members-elect of each house that the street . . . on which the proposed improvement is to be made is used or occupied for business purposes, and that the improvement has been unanimously recommended by the Board of Public Works, such finding and declaration shall be final and conclusive for all purposes . . . and the improvement shall proceed regardless of any remonstrance."

On March 8, 1921, the Board of Public Works passed a resolution which recited that it unanimously found and declared that 39th Street from the Paseo to Prospect Avenue was used and occupied for business purposes and that it unanimously recommended that it be re-paved as a business street. The resolution then stated that the proposed improvement consisted of repairing where necessary and cleaning the concrete then on the street and laying thereon a binder course of bituminous concrete one and one-half inches thick and then upon that a wearing surface of sheet asphalt one and one-half inches thick, and that payment of the entire cost was to be made in special tax bills evidencing special assessments against the lots chargeable therewith according to frontage on the street. Subsequently a remonstrance purporting to be signed by the owners of ninety-three per cent of front feet of the lands fronting on the street was offered to be

filed with the Board of Public Works, but the board refused to receive it. On the contrary it proceeded to perfect the plans and specifications for the improvement and to advertise for bids. Thereupon, the present proceeding was instituted.

Plaintiffs' evidence offered on the trial may be epitomized as follows:

The portion of 39th Street which it is proposed to re-pave lies in a residential portion of Kansas City and is not a business street. It is already substantially paved with a six-inch layer of concrete, eighty-five or ninety per cent of the total area of which is in practically as good condition as when originally laid. The remaining ten or fifteen per cent can be readily and economically repaired by cutting out portions of concrete where it is broken down and filling with new and by covering cracks and slight depressions with asphalt patches. The present pavement can be repaired in this way so that it will reasonably serve all traffic passing over the street for an additional period of five or six years, and will cost the adjoining property owners but one dollar per front foot. The re-paving as proposed by the Board of Public Works on the other hand will cost approximately seven dollars a front foot. Benefits will accrue to abutting property only to the extent that the street is made reasonably passable. This can be effected as completely by repairing as by re-paving. The additional burden of six dollars a front foot is therefore unnecessary and oppressive because no value or benefit accrues from it.

The deductions from defendants' evidence may be summarized as follows:

The street is used and occupied largely for business purposes. There were, at the time of the trial, thirty-three stores and business houses, five flats, two churches, one school and forty dwellings. Over half of the buildings on the street were used for purposes other than dwellings. The street is and has been for several years

developing into a business street. All new structures erected on the street during the last five years have been for business purposes, and none for dwellings.

In 1912 the street was paved with a six-inch concrete pavement. On account of the inferior quality of work, and the heavy traffic over the street, the concrete rapidly disintegrated and went to pieces. In the fall of 1919 the pavement was repaired at considerable expense, but without any permanent success. The city engineer and the Board of Public Works, upon an investigation of the condition of the old pavement, determined that it could not be economically repaired, but that it could be successfully re-surfaced with sheet asphalt, using the old concrete as a base, thus preserving and protecting the present concrete, which would make a durable and permanent pavement, and would probably last, with some attention, from twelve to twenty years. The cost of thus improving the street would amount to about $6.86 per front foot, with four years in which to pay it, by paying one-fourth each year, or $1.73 per year per front foot.

If the old pavement is patched up it will only last about five or six years and during that time it will have to be looked after and additional repairs made from time to time at a cost of from $2000 to $3000 per year, and at the end of five or six years it will have to be entirely re-constructed. Each of the various properties of the plaintiffs will be increased in value by the proposed improvement when made to the extent at least of the proposed tax.

The trial court found, as alleged in plaintiffs' bill, that the section of 39th Street which it was proposed to re-pave was not and never had been a business street, that the resolution of the Board of Public Works so declaring, and recommending to the Common Council to so declare and find, was passed for the purpose and with the intent to deprive the owners of property fronting on the street of the right of remonstrating against the proceeding to re-pave it, and that the cost of re-paving

300 Mo.—39

"as proposed, threatened and intended by the Board of Public Works" was "unnecessary, unreasonable, oppressive and confiscatory in nature of the property . . . chargeable with special tax bills for (its) payment." Based on these findings the court entered its decree enjoining the defendants, constituting the Board of Public Works, from further proceeding in any manner to negotiate a contract for the construction of the proposed improvement "and from transmitting or presenting in any manner any such proposed contract, whether executed by said board and bidder or not, to the Common Council of said city for its confirmation and approval." From such judgment defendants prosecute this appeal.

Many interesting questions are discussed in the able briefs of counsel, but the one that lies at the threshold of the case is whether the suit was prematurely brought.

Whether it is necessary or expedient to make the proposed street improvement and whether the expense of making it should be assessed upon abutting properties are purely legislative questions. The power to determine them is vested in the Common Council of Kansas City. But so far they have never been considered, much less acted upon, by that body. The Board of Public Works is without legislative powers; it is merely an administrative body. With respect to the two main propositions involved in this proceeding, namely, whether the street in question shall, or may be, declared a business street and whether from the standpoints of utility and economy it is necessary to re-pave it, it cannot act; it can only recommend. The Common Council is in no way bound by the board's recommendation. It may accept it, or it may reject it. As yet it has done neither. For this or any other court to intervene at this stage of the proceedings and determine matters that are wholly committed to the legislative discretion of the Common Council would be an act of pure usurpation.

If the Common Council had acted, we could review its action to the extent of determining whether such

action had had its inception in fraud or whether it manifested an abuse of power. [Skinker v. Heman, 148 Mo. 349; Barber Asphalt Co. v. French, 158 Mo. 534; Field v. Barber Asphalt Co., 194 U. S. 618.] But the Common Council has not acted and we cannot anticipate that when it does it will act wrongfully. If a requirement to re-pave the street is unnecessary, unreasonable, oppressive and confiscatory of the abutting property, as respondents claim, it cannot be assumed in advance that the Council will pass an ordinance making such a requirement. It represents the public at large including the owners of abutting property; it is to be presumed that it will investigate, and that it will bring to the determination of the questions now pressed by respondents an informed judgment and as well a purpose to exercise it honestly. There is not a fact or circumstance suggested in the record anywhere from which a contrary inference may be drawn. The suit was therefore prematurely brought. An injunction will not lie to allay the mere fears or apprehensions of the plaintiffs. [Lester Real Estate Co. v. St. Louis, 169 Mo. 227; Thomas v. Musical Union, 121 N. Y. 45; Kerr v. Riddle, 31 S. W. (Tex.) 328; Springer v. Walters, 139 Ill. 419; Roudanez v. New Orleans, 29 La. Ann. 271.]

The judgment is reversed and the cause remanded with directions to the trial court to dismiss plaintiffs' bill. All concur.